1

2

3                                                            O

4

5

6                    UNITED STATES DISTRICT COURT

7                    CENTRAL DISTRICT OF CALIFORNIA

8

9   PERFECTO ESPINOZA AND      )   Case No. EDCV 07-1601-VAP
    CESAR PEDROZA,             )   (OPx)
10  individually and on        )
    behalf of all others       )   **[Motion filed on October 20,**
11  similarly situated,        )   **2008]**
                               )
12              Plaintiffs,    )   **ORDER GRANTING MOTION FOR**
                               )   **CLASS CERTIFICATION**
13       v.                    )
                               )
14  DOMINO'S PIZZA, LLC, a     )
    Michigan Limited           )
15  Liability Company;         )
    DOMINO'S PIZZA             )
16  DISTRIBUTION, LLC, a       )
    Michigan Limited           )
17  Liability Company; and     )
    DOES 1-100, inclusive,     )
18                             )
                Defendants.    )
19  _____  )

20

21       Plaintiffs' Motion for Class Certification ("Motion")

22  came before the Court for hearing on December 15, 2008.

23  The Court permitted Plaintiffs to submit additional

24  information after the hearing.  After reviewing and

25  considering all papers filed in support of, and in

26  opposition to, the Motion, except for those materials

27  explicitly excluded in this Court's January 10, 2008

28  Minute Order, the Court GRANTS the Motion.

# I.   BACKGROUND

## A.   Procedural History

Plaintiffs Perfecto Espinoza ("Espinoza") and Cesar Pedroza ("Pedroza") (collectively "Plaintiffs") filed their First Amended Complaint ("FAC") on December 2, 2008 asserting five claims under California law arising from their work for defendant Domino's Pizza, LLC. ("Defendant").  Defendant employed Plaintiffs to drive trucks to transport pizza ingredients from a Southern California distribution center to Defendant's stores. (Declaration of Daniel Charboneau ("Charboneau Decl.") ¶ 2.)  Plaintiffs now seek certification under Rule 23 of the Federal Rules of Civil Procedure of four classes.

1) **The Meal Break Class**, defined as "[a]ll current and former non-exempt employees of DOMINO'S PIZZA, LLC who were based out of the Southern California Distribution Center in Ontario, California []or the Northern California Distribution Center in Hayward, California, and whose job responsibilities at any time during the period from October 29, 2003 through the present (the 'Class Period'), included driving trucks and/or acting as an assistant driver (also known as a 'Route Pro') on the trucks which delivered supplies from a distribution center to various establishments in California." (Mot. 1; FAC ¶ 10).

2)   **The Inspection Work Class** (called by Plaintiffs the
     "Non-Driving Work Class"), defined as "[a]ll current
     and former employees of DOMINO'S PIZZA, LLC, paid on
     a piece-rate bas[i]s, who were based out of the
     Southern California Distribution Center in Ontario,
     California, []or the Northern California Distribution
     Center in Hayward, California, and who performed at
     least one inspection of a truck belonging to
     defendant before or after driving a route between
     June 25, 2004 through June 1, 2006."  (Mot. 1; FAC ¶
     10.)

3)   **The California Labor Code section 203 Class**,
     coextensive with the Meal Period Class.

4)   **The California Labor Code section 226 Class**,
     coextensive with the Meal Period Class.  (Mot. 2; FAC
     ¶ 48.)

    Plaintiffs filed their Motion for Class Certification
("Motion") with supporting documents on October 20, 2008,
noticed for a hearing on December 15, 2008.  Defendant
filed its Opposition ("Opp'n") with supporting documents
on November 24, 2008.[1]  Plaintiffs filed their Reply on
December 5, 2008 with additional documents.

---

[1]The declarations submitted by both parties violate
Local Rules 11-3.1.1 (typeface size), 11-3.1
(legibility).  Documents violating the Local Rules may be
rejected.

On December 23, 2008, Plaintiffs submitted their "Supplemental Briefing In Support of their Motion for Class Certification" ("Pls.' Supp'l"), supported by the Declaration of Michael Malk ("Dec. 23 Malk Decl."), the Declaration of Perfecto Espinoza ("Espinoza Decl." Ex. E to Malk Decl.), and the Declaration of Barry Goldstein ("Goldstein Decl.").  On December 23, 2008, Goldstein associated as Plaintiffs' counsel.  (Goldstein Notice of Association of Counsel.)

Defendants timely submitted their "Response to Plaintiffs' Supplemental Briefing in Support of Motion for Class Certification" ("Response").

**B.  Evidentiary Objections**

On November 24, 2008, Defendant filed its Objections to Evidence Submitted in Support of Plaintiffs' Motion for Class Certification ("Objections").  Defendant numbers each Objection and the Court refers to them in this way.

The Court sustains Objections Nos. 1, 2, 4, 5, and 6 (as to the second part of the quoted sentence).

The Court overrules Objections Nos. 7 and 8.

4

1    Objection No. 3, directed to page 73 of Bennett's
2  deposition transcript, is moot, as Plaintiffs did not
3  submit that page to the Court in its moving papers.
4  Objection No. 9 is moot as well.
5
6  **C.   Facts**
7    Plaintiffs and the proposed class are or have been
8  employed by Defendant as drivers or drivers' assistants
9  (route pros) in California during two time periods:
10 October 2003 until present for the Meal Period, section
11 203, and section 226 classes; and between June 2004 and
12 June 2006 for the Inspection Work Class.  (Mot. 2.)
13 Drivers and drivers' assistants are referred to
14 collectively as "workers."
15
16   Defendant employed Plaintiffs to distribute pizza
17 ingredients to its stores.  Plaintiffs drove trucks or
18 assisted drivers.  (Mot. 2-3; Charboneau Decl. ¶ 2.)  All
19 members of the proposed classes were based out of the
20 Southern California distribution center in Ontario, or
21 out of the Northern California distribution center in
22 Hayward.  Defendant scheduled drivers to run routes by
23 themselves or with an assistant for a day, or overnight
24 by themselves, or overnight with another driver.  The
25 nature of the drivers' assistants' duties depended
26 entirely on the work of the drivers.  (Mot. 10:25-11:11.)
27
28

**1.   Meal Break Class**

The classes consist of approximately 130 members, with about 100 drivers and approximately 30 drivers' assistants.  (FAC ¶ 11; Mot. 3.)

**a.   Defendant's meal break policy**

From the opening of the class period in October 2003 through at least January 1, 2008, Defendant's written meal break policy stated "[m]eal and rest breaks must be taken according to applicable laws.  Any applicable state laws that place restrictions in the workplace are posted in the workplace." (Mot. 3 n.6 citing Declaration of Michael Malk ("Malk Decl.") Ex. D, Domino's Pizza Policy Manual § 4.1 Hours of Work; Charboneau Decl. Ex. D.)

Defendant avers it also told drivers to rest when they were tired or eat when they were hungry.  (Opp'n 10.)

**b.   Distribution of meal break policy**

Defendant placed the written meal break policy in a manual in the distribution centers.  (Mot. 3:5-17 citing Charboneau Dep. 50:13-17; Charboneau Decl. Ex. C.) Plaintiffs claim the written policy was not disseminated to workers, they had never seen the policy, and they did not know about the policy.  (Mot. 3:20-4:1.)  They also contend no information about the meal break policy was in

the employee handbook provided to workers.  (Mot. 3 n.6.)
Defendant does not controvert Plaintiffs' version of
events regarding the written policy.  (Opp'n 9:20-10:6
(provision of written policy in policy manual).)

Defendant also "told Drivers to stop for meals if
they were hungry," although Plaintiffs proffered evidence
several drivers do not remember ever hearing such
statements.  (Compare Opp'n 10:18 with Mot. 4:11-12.)
Defendant also posted the appropriate Wage Order, which
addresses meal breaks, and employed drivers charged with
knowledge of Federal Motor Carrier regulations, which
address meal breaks.  (Opp'n 10.)

### c.   Statements by Defendant's managers

Plaintiffs offer proof managers actively discouraged
workers from taking half-hour off-duty meal breaks and
encouraged drivers to eat while they drove.  (Mot. 7.)
Several workers report they complained to Defendant they
could not take off-duty meal breaks and Defendant's
managers told workers to eat while they drove.  (See,
e.g., Declaration of Daniel Arreola ("Arreola Decl.") ¶
8, Ex. J to Malk Decl.; Declaration of Antonio Canones,
Sr. ("Canones Sr. Decl.") ¶ 7, Ex. P to Malk Decl.;
Declaration of Francisco Gutierrez ("Gutierrez Decl.") ¶
7, Ex. V. to Malk Decl.; see Mot. 7 n.20.)

1          **d.   Defendant's scheduling practices**

2               **i.   DOT regulation**

3     The parties agree workers must complete their routes

4   within time limits set by the Department of

5   Transportation ("DOT").  The DOT caps how many total

6   hours a driver may drive, stop to unload materials, take

7   breaks, or do any other work that involves driving.  For

8   most of the work performed by the proposed class, the DOT

9   limits were: 14 hours if the driver was on his own or

10  with a drivers' assistant; 16 hours if two drivers worked

11  together; additional time periods if the work required an

12  overnight break.

13

14          **ii. Defendant's monitoring technology**

15    To comply with DOT time limits, Defendant employed

16  various on-truck monitoring methods during the proposed

17  class period.[2]

18

19    Defendant installed Global Positioning System ("GPS")

20  monitoring devices in the trucks which kept track, to the

21  minute, of a driver's location and whether he was driving

22  or not.  (See Mot. 6:10-11, 8:4-6;  Malk Decl. Exs. A-C

23  (write-ups of drivers for exceeding DOT time limits, even

24  by one or two minutes).)  Defendant could gain access to

25  this information in real time, although it generally did

26  _____

27       [2]Defendant used a computer system called CADEC until
    2005, when it adopted the PeopleNet system.  (Opp'n 9
28  n.70.)

not.  It reviewed the information from this system regularly.  (Mot. 8:6-11, citing Charboneau Dep. 60-61.)

As Plaintiffs demonstrate, however, the GPS system does not collect information regarding meal breaks. (Mot. 8:15-18; <u>see also</u> Malk Decl. Exs. H-I (examples of the logs from the GPS systems).)  No other records of meals taken appear to have been kept.

### iii.   Consequences for working beyond DOT time limits

If a driver continued to drive beyond the DOT limits, he was disciplined.  To avoid discipline, he had to stop at the side of the road and wait for another driver to 'rescue' him.  (Mot. 5:15-17.)

Plaintiffs produced declarations from four drivers who either exceeded the DOT limits because they stopped for food, or were scarcely able to comply with the DOT time limits despite foregoing meal and rest breaks. (Declaration of Donald Bender ("Bender Decl.") ¶¶ 2, 8 (exceeded DOT limits by 15 minutes when he stopped for fast food for 15 minutes), Ex. M to Malk Decl.; Declaration of Herbert A. Castro ("Castro Decl.") ¶ 5 (barely finished within DOT limits even though he skipped meals), Ex. Q to Malk Decl.; Declaration of Reginald Lee ("Lee Decl.") ¶ 5(same), Ex. Y to Malk Decl.; Declaration

of Shane Mosqueda ("Mosqueda Decl.") ¶ 5 (same), Ex. AA
to Malk Decl.)

### iv.     Workers' schedules

The parties agree Defendant created its workers'
schedules.  Plaintiffs contend the routes were so
demanding and unpredictable they placed workers under
constant, intense time pressure, thus making it
impossible to take 30-minute meal breaks.  (Mot. 5:11-
15.)  The unpredictable nature of the routes also made it
impossible for workers to take a timely meal break, even
if they eventually finished their route well within the
14-hour limit imposed by the DOT, because they could not
know by the fifth or sixth hour of the route whether they
would comply with the DOT limit.  (Mot. 5:11-13, 5 n.14
(reviewing declarations from 18% of the proposed class
that time pressures made it impossible to stop for
breaks); Mot. 6:6-7.)

### d.   Defendant does not compensate those deprived of meal breaks

California Labor Code section 512 requires employers
to compensate workers who are not provided with meal
breaks.  Defendant admits that some drivers may have been
forced to forego such breaks, for example, if they were
locked in heavy traffic.  (Charboneau Dep. 32:18-21.)
Defendant has no method to pay workers thus denied a meal

1 break for the foregone break.  (Mot. 9:25-27 citing
2 Charboneau Dep. 28:15-20; Charboneau Dep. 100:19-20 (no
3 one paid for missed meal breaks since inception of
4 litigation).)

5

6          e.   On-Duty meal period agreements for drivers'
7               assistants

8      In mid- to late- 2007, Defendant had drivers'
9 assistants, although not drivers, sign "On-Duty Meal
10 Period Agreement[s]."  (Mot. 10:20-24; citing Malk Decl.
11 Ex. G; Further Declaration of Michael Malk ("Further Malk
12 Decl.") Ex. GGG).  These state, "[t]he Company and the
13 undersigned (the "Employee") agree that the nature of the
14 Employee's work as a Driver's Helper prevents the
15 Employee from being relieved of all duty during the
16 Employee's meal period. . ."

17

18      Plaintiffs assert the job responsibilities of
19 drivers' assistants are totally derivative of the job
20 duties of drivers and thus, if one cannot take an off-
21 duty meal period, neither can the other.  (Mot. 10:25-
22 11:11.)  Defendant did not controvert this assessment.

23

24      2.   Inspection Work Class
25      The following facts are relevant only to the
26 Inspection Work Class, which Plaintiffs seek to certify
27 for the June 2004 - June 2006 period.  DOT regulations
28

require drivers to inspect trucks before and after they drive.  The parties dispute how long these inspections take, but according to information from both sides, a pre-route inspection could take from five to thirty minutes, both before and after work, for a total of as long as one hour per day.  (Mot. 11:18-22.)  The Inspection Work Class seeks payment for that time.

The parties agree drivers were paid a piece rate, determined by miles and weight, from at least October 2003 until either September 2005, according to Defendant, or until June 2006, according to Plaintiffs.  (Compare Mot. 11:19-22 with Opp'n 7:11-14.)  Defendant claims, "[p]rior to September 2005, Drivers' pay was listed in a single rate specifying weight and mileage.  This pay included all work that drivers performed before, during, and after their routes."  (Opp'n 8:19-20.)

### 3.   Section 203 Class (pay upon separation from employment)

California Labor Code section 203 proscribes failure to pay wages to an employee who is discharged from employment.  Plaintiffs allege Defendant has paid workers improperly because it has failed to pay them for foregone meal periods when their employment ends.  (Mot. 2; FAC ¶ 53.)  Plaintiffs offer the same facts to support the

Section 203 Class as those offered in support of the proposed Meal Break Class.

### 4.   Section 226 Class (itemized wage statements)

California Labor Code section 226 proscribes failure to provide accurate wage statements showing the total hours worked by the employee and imposes penalties for violations.  Plaintiffs allege Defendants impermissibly denied them meal breaks, failed to pay them required premia, and failed to list either the foregone meal periods or pay therefor on wage statements.  (See Pls.' Supp'l 5.)  The Section 226 Class is "co-extensive" with the Meal Break Class.  (See Mot. 2; FAC ¶ 48.)

### II.   LEGAL STANDARD

Under Rule 23(a), in order to bring a class action, a plaintiff must demonstrate:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In addition to these prerequisites, a plaintiff must satisfy one of the prongs of Rule 23(b) in order to maintain a class action.  Where, as here,

plaintiffs moves for class certification under Rule
23(b)(3), the plaintiffs must prove that:

> the questions of law or fact common to
> class members predominate over any
> questions affecting only individual
> members, and that a class action is
> superior to other available methods for
> fairly and efficiently adjudicating the
> controversy.

Fed. R. Civ. P. 23(b).

Class actions have two primary purposes:  to further
judicial economy by avoiding multiple suits and to
protect the rights of persons who "might not be able to
present claims on an individual basis." Haley v.
Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996).
The party seeking class certification bears the burden of
demonstrating that it has met each of the four
requirements of Rule 23(a) and at least one of the Rule
23(b) requirements.  Zinser v. Accufix Research Inst.,
253 F.3d 1180, 1186 (9th Cir. 2001).

The Court acts as a fiduciary for the absent class
members, and "must conduct an independent and rigorous
analysis of the moving party's claims to examine whether
the requirements of Rule 23 are met." In re Paxil
Litig., 212 F.R.D. 539, 543 (C.D. Cal. 2003) (quotations,
citation omitted).  In addition, to meet its burden the
moving party "'must provide facts to satisfy these
requirements; simply repeating the language of the rules

1   . . . is insufficient.'"   Id. (quoting Bates v. United
2   Parcel Serv., 204 F.R.D. 440, 443 (N.D. Cal. 2001))
3   (ellipsis in original).

4

5                      **III. DISCUSSION**
6   **A.   Rule 23(a)**
7          **1.   Numerosity**
8          In determining whether under Rule 23(a)(1), joinder
9   of all members is "impracticable," courts have held the
10  plaintiff need not show it would be "impossible" to join
11  every class member.   Haley, 169 F.R.D. at 647.
12  Additionally, there is no specific number cut-off, as the
13  peculiar facts of each case may be examined.   Ballard v.
14  Equifax Check Servs., Inc., 186 F.R.D. 589, 594 (E.D.
15  Cal. 1999).   Courts have not required evidence of
16  specific class size or identity of class members to
17  satisfy the requirements of Rule 23(a)(1).   Robidoux v.
18  Celani, 987 F.2d 931, 935 (2d Cir. 1993).

19

20         Here all four classes include **at least 50 and up to**
21  approximately 130 workers; they all satisfy the
22  numerosity requirement.   (Mot. 13:13-21; **Pls.' Supp'l 5.**)
23  Indeed, Defendant does not argue they do not.   Plaintiffs
24  have established this criterion.

25

26

27

28

1

**2.   Commonality**

2      Courts have construed Rule 23(a)(2)'s commonality

3 requirement permissively.  <u>Hanlon v. Chrysler Corp.</u>, 150

4 F.3d 1011, 1019 (9th Cir. 1998).  As the Ninth Circuit

5 has explained:

6            All questions of fact and law need not
             be common to satisfy the rule.  The
7            existence of shared legal issues with
             divergent factual predicates is
8            sufficient, as is a common core of
             salient facts coupled with disparate
9            legal remedies within the class.

10 <u>Id.</u>

11

12      Additionally, another Court in this District has

13 stated that "the commonality requirement is interpreted

   to require very little."  <u>Paxil</u>, 21 F.R.D. at 549.

14 "[F]or the commonality requirement to be met, there must

15 only be one single issue common to the proposed class."

16 <u>Haley</u>, 169 F.R.D. at 648.

17

18

       **a.   Meal Break Class**

19
        The Meal Break Class shares common questions of law
20
   and fact.  Plaintiffs show Defendant maintained uniform
21
   meal break policies throughout California.  (Mot. 14:25-
22
   26 citing Charboneau Dep. 17:16-18:17, 48:14-19.)
23
   Plaintiffs demonstrate they were subject to Defendant's
24
   technology that recorded their movements (Mot. 15:26-
25
   16:2); they delivered the same materials on scheduled
26
   routes and under strict DOT time limits.  Plaintiffs
27
   produced evidence from nearly 20% of the proposed class
28

16

1  showing these workers felt intense time pressure that
2  prevented them from taking meal breaks.

3

4      Plaintiffs also have demonstrated common legal
5  questions exist here, including: (1) Does Defendant's
6  practice of maintaining the meal break policy in the
7  distribution center satisfy the requirements of
8  California law that employers provide a meal break (Mot.
9  15:9); (2) Do Defendant's scheduling practices provide
10 workers with meal breaks although workers feel they are
11 forced to forego meal breaks and Defendant never pays for
12 foregone meal breaks (Mot. 14:27-15:4, 15:5-6 (20% of
13 class)), Opp'n 13:13-24); (3) Does Defendant's practice
14 of assuming (even in the face of complaints to the
15 contrary) that workers were able to take meal breaks
16 comply with California's requirement employers provide
17 meal breaks?[3]  (Mot. 17:12-17).

18  _____

19      [3]The facts here, at least as alleged by Plaintiffs,
    are easily distinguishable from those in <u>Brown v. Federal</u>
20  <u>Express Corporation</u>, 249 F.R.D. 580 (C.D. Cal. 2008)
    where certification was denied for want of common facts.
21  There, the members of the proposed classes had radically
    different job duties, which ranged from routes during
22  which they never left the employer's premises, to long-
    haul routes with a single stop, to local courier routes
23  with up to one hundred stops. <u>Brown</u>, 249 F.R.D. at 586.
    They were also "subjected to different levels of
24  monitoring"  (<u>Brown</u>, 249 F.R.D. at 586) and transported
    many different kinds of cargo to and from many locations.

25      Here, the drivers, whether driving single-day or
26  multi-day routes, depart from a single depot for Northern
    or Southern California, deliver the same kinds of goods
27  to the same  kinds of stores, and are subject to uniform
    monitoring technology.  The number of stops varies by the
28                                              (continued...)

                            17

1    Defendant counters it need only provide meal breaks,
2  not ensure that they were taken.  (See Opp'n 16:6-10.)
3  This does not defeat commonality.  Common questions exist
4  as to whether Defendant failed to provide workers with
5  meal breaks because (1) it failed to communicate their
6  right to these breaks and (2) whether Defendant's
7  scheduling practices deprived the proposed  class of meal
8  breaks.
9
10    Also, Defendant contends the reasons drivers did not
11  take meal breaks require individualized inquiry and
12  defeat commonality.  (Opp'n 18:9-11.)  This is
13  unconvincing, as Plaintiffs have produced evidence
14  Defendant's centralized scheduling process imposed routes
15  so demanding it was impossible for workers to take meal
16  breaks.  If, as Plaintiffs contend, the result of
17  Defendant's communications or centralized routing system
18  was sufficient as a matter of law to deprive the proposed
19  class of their meal breaks, then individualized inquiry
20  is not required.  Of course, if the Court later finds
21  Defendant's centralized system did not so deprive the
22  proposed class of legally-required meal breaks, then
23  decertification might be merited.
24
25
26  _____
27      [3](...continued)
   length of route and the terrain, but the facts presented
28  by the class need not be identical.

18

1    Third, Defendant seeks to defeat commonality by

2  showing drivers were disciplined for continuing to drive

3  once they had exceeded DOT time limits, not for arriving

4  late.  (See Opp'n 18:12-19.)  Defendant's attempt to

5  divorce the company's mandate that workers comply with

6  DOT time limits, from the pressure Plaintiffs report to

7  complete their routes within DOT time limits, rings

8  hollow.  (See Reply 5:15-16, 6 n.17, Malk Decl. Ex. A

9  (Espinoza written up for returning to the distribution

10  center a single minute late).)  For example, in the

11  deposition testimony of Bulmaro Alcazar presented by

12  Defendant itself, the declarant describes how he reached

13  the DOT time limit, had to be rescued, and did not suffer

14  formal discipline.  Nevertheless, his description shows

15  that being rescued was not a favorable outcome:  being

16  rescued meant calling in and "wak[ing] somebody in the

17  middle of the night," and that he "sat there [at the side

18  of the road] for hours" waiting for another truck to

19  rescue him.  (Alcazar Dep. 114:5-6; 115:2.)

20

21    Accordingly, Plaintiffs have established commonality

22  for the Meal Break Class.

23

24          **b.   Inspection Work Class**

25    Plaintiffs make a sufficient showing regarding

26  certification of this class.  To satisfy the requirement

27  of common factual issues, Plaintiffs proffer the

28

deposition testimony of Pattee and Canones, who state
they were not compensated for inspections they performed
before and after they ran their routes.  (Mot 17:22-23
(citing Pattee); Reply 11 n.28.)

There are some weaknesses in Plaintiffs' proof.
Plaintiffs rely on Pattee, the driver who believed he was
represented by Defendant's counsel at his deposition,
suggesting he may be more easily confused than other
workers.  Plaintiffs also cited to the deposition
testimony of Ian Hall, who apparently stated his check
reflected the exact number of miles he drove and pounds
delivered, leaving no room for adjustment for
inspections, but Plaintiffs failed to attach the
appropriate page of his deposition transcript.  (Reply
12:1-5; see Further Malk. Decl. Ex. YY.)

Nevertheless, the Court finds Plaintiffs made the
requisite showing as to the Inspection Work Class because
Defendant does not assert drivers were ever paid in
unique ways, only that the way all drivers were paid
changed in September 2005.  (Opp'n 7:11-14.)

There are some weaknesses in the credibility of the
evidence proffered by Defendant as well.  Defendant's
claim that the payment policy changed in September 2005,
not June 2006, as Plaintiffs claim, is based on the

declaration of Charboneau, who lacks personal knowledge of events in 2005.  (See, e.g., Opp'n 7:11-14, citing Charboneau Decl. ¶ 10.)  Charboneau did not assume any post in California until April 2006, a few months before the proposed class closed.  (Chaboneau Decl. ¶ 10.) Charboneau testified at his deposition the only basis on which he knew the pay policy changed in 2005 rather than 2006 was "what [he] understand[s] from other people." (Reply 12 n. 29; Charboneau Dep. 126:3-9, Further Malk Decl. Ex. DDD.)  On balance, then, Plaintiffs show the Inspection Work Class shares factual issues.

The Inspection Work Class also shares common legal issues.  Defendant represents it paid drivers prior to 2005 with a piece rate formula through which drivers were compensated for the miles they drove and the weight they hauled.  Defendant asserts the pre- and post- trip inspections on which Plaintiffs now seek relief were factored into those payments.  (Opp'n 1:20-21; see also 22:16-18.)

Plaintiffs assert this uniform policy violated California law, which requires payment for each hour worked and does not permit the averaging method acceptable pursuant to the federal Fair Labor Standards Act.  See Armenta v. Osmose, Inc., 135 Cal. App. 4th 314,

323 (2005).   Accordingly, Plaintiffs established
commonality regarding the Inspection Work Class.

c.   **Section 203 (payment upon separation from employment)**

Plaintiffs demonstrate Defendant did not pay any premia for foregone meal breaks and did not make payments for these meal breaks when drivers and drivers' assistants were separated from employment.   (Mot. 24:1-10; Charboneau Dep. 28:15-20 (stating his knowledge Defendant "did not encounter" a situation where Defendant failed to provide a meal break for a driver); 99:24-100:15 (to Charboneau's knowledge no driver or route pro has ever been paid for missed meal breaks as part of their final paychecks).)   Plaintiffs have established common questions of fact as to the Section 203 Class.

d.   **Section 226 Class (itemized wage statements)**

Plaintiffs show the Section 226 Class presents common questions of law, as they allege Defendant denied them all meal breaks and Defendant does not show the meal breaks were listed on workers' wage statements.   (See Pls.' Supp'l 5-6.)

1        **3.   Typicality**

2        To gauge typicality, a "court does not need to find

3    that the claims of the purported class representative are

4    identical to the claims of the other class members."

5    <u>Haley</u>, 169 F.R.D. at 649.  The Ninth Circuit in <u>Hanlon</u>

6    further wrote that "[u]nder the rule's permissive

7    standards, representative claims are 'typical' if they

8    are reasonably co-extensive with those of absent class

9    members; they need not be substantially identical."  150

10   F. 3d at 1020.  Additionally, the class representatives

11   "must be able to pursue [their] claims under the same

12   legal or remedial theories as the unrepresented class

13   members."  <u>Paxil</u>, 212 F.R.D. at 549.

14

15       While commonality requires only one unifying factual

16   or legal question, typicality requires "'that the claims

17   of the class representatives be typical of those of the

18   class'" and is achieved "'when each member's claim arises

19   from the same course of events, and each class member

20   makes similar legal arguments to prove the defendant's

21   liability.'"  <u>Paxil</u>, 212 F.R.D. at 550 (quoting <u>Armstrong</u>

22   <u>v. Davis</u>, 275 F.3d 849, 868 (9th Cir. 2001)).

23

24            **a.   Meal Break Class**

25       Plaintiffs satisfy the typicality requirement for the

26   Meal Break Class.  Plaintiffs, like other drivers, were

27   subject to a uniform meal break policy and claim relief

28

1   based on Defendant's practice of scheduling "deliveries .

2   . . as tightly together as possible to allow employees to

3   usually return to the distribution center by the DOT

4   maximum driving time of 14[] hours if they skip their

5   meal breaks." (Mot. 19; see Mot. 18:21-19:15.)

6

7       Defendant did not offer arguments specifically gauged

8   to defeating typicality, but their contention regarding

9   the predominance of individual over common issues

10  addresses much of the same ground. (Opp'n 19-21.)

11  Defendant seeks to show individualized issues such as

12  "[d]river's experience, the amount of product to be

13  delivered, traffic patterns, the type of route, and even

14  weather conditions . . . render this cause of action

15  inappropriate for class treatment." (Opp'n 21.) This

16  may contradict Plaintiffs' proof that many drivers felt

17  such pressure it was impossible to take breaks, but it

18  does not defeat typicality. At the class certification

19  stage, the Court undertakes a rigorous analysis of the

20  evidence presented, but does not weigh the ultimate

21  merits of the case in a way that would usurp the jury's

22  role. See Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1177-

23  78 (9th Cir. 2007.)

24

25          b.   Inspection Work Class

26      As to the Inspection Work Class, Plaintiffs have

27  borne their burden. They show, and Defendant does not

28

dispute, that all drivers during a given period were paid using the same method.  The parties only dispute whether Defendant retired that method in 2005 or in 2006.  If the policy were changed in 2005, the claims may be time-barred.  Either way, the claims of Plaintiffs are typical of the class.

### c.   Section 203 Class (payment upon separation from employment)

For the same reasons Plaintiffs have demonstrated typicality with regards to the Meal Break Class, Plaintiffs have also demonstrated typicality regarding the Section 203 Class.

### d.   Section 226 Class (itemized wage statements)

For the same reasons Plaintiffs demonstrate commonality regarding the Section 226 Class, they demonstrate typicality regarding the Section 226 Class. (See Pls.' Supp'l 5-6.)

### 4.   Adequacy of representation

Traditionally, courts have engaged in a two-part analysis to determine if the plaintiffs have met the requirements of Rule 23(a)(4): (1) the class representatives must not have interests antagonistic to the unnamed class members and (2) the representatives

must be able to prosecute the action "vigorously through qualified counsel."  <u>Lerwill v. Inflight Motion Pictures, Inc.</u>, 582 F.2d 507, 512 (9th Cir. 1978).

### a.  Named Plaintiffs

The two named plaintiffs, Pedroza and Espinoza, worked for different time periods and in different positions.  Espinoza began work with Defendant in May 1997, became a "driver-in-training" on August 7, 2005, completed the driver-in-training program in January, 2006, and then worked as a driver until the termination of his employment in August of 2007.  (Declaration of Perfecto Espinoza ("Espinoza Decl.") ¶ 2, Ex. to Malk Decl.; **Pls.' Supp'l 4.**)  Pedroza worked only as a driver and had a much shorter period of employment with Defendant, beginning in September 2006 and ending in October 2007.  (Declaration of Cesar Pedroza ("Pedroza Decl.") ¶ 2, Ex. CC to Malk Decl.)  Their dates of employment and positions affect which classes they can represent adequately.

### i.  Meal Break Class

Plaintiffs are adequate class representatives because they do not have interests conflicting with those of unnamed class members, and by prosecuting their claims they will obtain relief for the class.  Plaintiff's counsel states they have responded to document requests

1   and plaintiff Espinoza testified at a deposition.   (Mot.
2   19:22-24; Malk Decl. ¶ 46.)

3

4        Defendant asserts Plaintiffs are inadequate
5   representatives because they did not work at the Northern
6   California distribution center.   (Opp'n 25:11-23.)   This
7   is unpersuasive because Plaintiffs have shown uniform
8   policies applied throughout California, and have produced
9   declarations from drivers who worked there.   (See
10  Phillips Decl. ¶¶ 2-3; Miguel Decl. ¶ 2-4.)

11

12                  **ii. Inspection Work Class**
13       Defendant asserts Plaintiffs are not adequate
14  representatives because they did not work as drivers
15  before September 2005, when Defendant claims it retired
16  the piece rate practice to which Plaintiffs object.
17  (Opp'n 25:11-23.)   Even assuming, without deciding, that
18  Defendant changed its policies in September 2005,
19  Espinoza is an adequate representative of the Inspection
20  Work Class.   Espinoza's Declaration states he performed
21  inspections during the class period.   Although it does
22  not state he was paid on a piece-rate basis, the Court
23  infers he was so paid, as the evidence before the Court
24  shows Defendants had a uniform payment policy during the
25  relevant period.

26

27

28

On the other hand, Pedroza clearly was not a member of the Inspection Work Class, as his employment with Defendant began in September 2006, after both parties agree Defendant's practices had changed.

### iii.      Section 203 Class (payment upon separation from employment)

For the reasons discussed above regarding the Meal Break Class, Plaintiffs have demonstrated they are adequate representatives of the Section 203 Class.

### iv.      Section 226 Class (itemized wage statements)

Plaintiffs provide sufficient information to conclude Espinoza is an adequate representative of the Section 226 Class.

Defendant asserts Plaintiffs lack standing to assert a claim under section 226 because they do not show injury based on Defendant's failure to provide itemized wage statements.  (Opp'n 24:1-12.)  Defendant relies on Brinkley, where plaintiff could not recover because he suffered no injury.

Plaintiffs have standing because the facts here are quite different from Brinkley.  In Brinkley, plaintiff

brought a claim for failure to pay meal breaks, but his claim under section 226 was based on something entirely separate: defendant's failure to correctly state the rate he was paid for mileage. Brinkley, 167 Cal. App. 4th 1278, 1282 (2008). The Brinkley court denied him relief because "the number of associated mileage hours and the dollar amount paid for associated mileage . . . were accurately stated in these pay stubs" and plaintiff therefore suffered no loss. Id. at 1282, 1284.

The Brinkley court distinguished the facts then before it from a situation like the one the Court now confronts: an employer failed to keep overtime records and that failure prevented employees from being paid overtime wages to which they were entitled. See id. at 880. Here, Plaintiffs assert Defendant failed to keep records of meal breaks and that they were not paid for them. Accordingly, under Brinkley Plaintiffs assert actual injury and have standing.

In Defendants' Response, they assert several arguments against Plaintiffs' standing under section 226 without providing authority therefor. The Court does not find these convincing.

1

### b.  Class Counsel

Adequate representation "'depends on the
qualifications of counsel for the representatives, an
absence of antagonism, a sharing of interests between
representatives and absentees, and the unlikelihood that
the suit is collusive.'"  Paxil, 212 F.R.D. at 550
(quoting Crawford v. Honig, 37 F.3d 485, 487 (9th Cir.
1994).  Courts now determine the adequacy of counsel
under Rule 23(g).  See, e.g., Hill v. Merrill Gardens,
L.L.C., 2005 WL 2465250, *3 (N.D. Ind. 2005).


Rule 23(g) provides,

> a court that certifies a class must
> appoint class counsel.  In appointing
> class counsel, the court:
> (A) must consider:
> (1)  the work  counsel  has  done  in
> identifying  or  investigating  potential
> claims in the action;
> (ii)  counsel's  experience  in  handling
> class actions, other complex litigation,
> and the types of claims asserted in the
> action;
> (iii)  counsel's  knowledge  of  the
> applicable law; and
> (iv)  the  resources  that  counsel  will
> commit to representing the class.

Fed. R. Civ. P. 23(g).


Plaintiffs offer sufficient proof of the adequacy of
their counsel.  With the association of Goldstein as
counsel, the Court is satisfied Plaintiffs will have
recourse to attorneys with the requisite experience,

30

1 knowledge, and resources.  (Goldstein Decl. Ex. A; Malk

2 Decl. ¶ 5 (submitted December 23).)

3

4 **B.  Rule 23(b)(3)**

5      In addition to meeting the prerequisites for class

6 certification under Rule 23(a), a plaintiff must satisfy

7 one of the prongs of Rule 23(b) in order to maintain a

8 class action.  Where, as here, plaintiffs moves for class

9 certification under Rule 23(b)(3), the plaintiffs must

10 prove that:

11          the questions of law or fact common to
          class members predominate over any
12          questions affecting only individual
          members, and that a class action is
13          superior to other available methods for
          fairly and efficiently adjudicating the
14          controversy.  The matters pertinent to
          these findings include:
15          (A) the class members' interests in
          individually controlling the prosecution
16          or defense of
          separate actions;
17          (B) the extent and nature of any
          litigation concerning the controversy
18          already begun by or against class
          members;
19          (C) the desirability or undesirability of
          concentrating the litigation of the
20          claims in the particular forum; and
          (D) the likely difficulties in managing a
21          class action.
   Fed. R. Civ. P. 23(b).

22

23      **1.  Meal Break Class**

24

25      Common issues predominate regarding the Meal Break

26 class and a class action is the superior way to resolve

27 the dispute.  All workers were subject to uniform

28 policies and expectations.  As discussed above, these

1  included Defendant's establishment of their schedules,
2  Defendant's uniform written and oral policies regarding
3  meal breaks, and Defendant's efforts to ensure they
4  complied with DOT time limits.  Plaintiffs have produced
5  evidence many workers felt they could not take meal
6  breaks at all or that they could not take them before the
7  sixth hour of work because their progress on their routes
8  was too uncertain and the consequences of exceeding the
9  DOT time limits dire.  (Mot. 20-21.)  Plaintiffs' common
10 factual and legal issues predominate and a class action
11 is superior because it will aid efficiency.  As
12 Plaintiffs allege, if the practices they show violate
13 California law, "the only individual issues left for
14 litigation  . . . will be the number of breaks denied to
15 each individual.  This is a damage question that does not
16 defeat class certification." (citation omitted) (Mot.
17 21:2-7.)

18

19     Defendant offers three arguments why common issues do
20 not predominate and a class action is not the superior
21 way to resolve this dispute.  First, Defendant argues
22 that differences in drivers' work frustrate Plaintiffs'
23 attempt to show common issues predominate.  Defendant
24 argues "[t]he key issue with respect to whether common
25 issues predominate is why putative class members who did
26 not take a meal break skipped their meal break."  (Opp'n
27 19:14-15.)  To support their contention this is the
28

central issue, Defendant offers declarations of drivers
who take meal breaks.

Plaintiffs show some of these are unreliable.  First,
they produce evidence from some of the same declarants,
who disavow portions of the statements submitted by
Defendant, saying they are not true.  (Reply 5-11.)
Furthermore, certain declarants state their employer's
attorneys obtained statements from them without first
explaining the litigation so they understood their
interests could be adverse to those of their employer.
(Id.)  Plaintiffs show that one declarant, whom
Plaintiffs' attorney deposed, believed he was represented
by Defendant's attorney.  (Reply at 5-11 discussing
Pattee.)

Defendant's attorneys submitted declarations
regarding the preparation of the evidence submitted to
the Court.  Upon review of these materials the Court is
satisfied the attorneys did not engage in bad faith in
investigation of the action and preparation of the
declarations by proposed class members.  Nevertheless,
Plaintiffs demonstrated some declarants were confused,
that the information submitted on their behalf was
incomplete or inaccurate, and accordingly the Court
accords them less weight.  Plaintiffs have raised
sufficient doubts about the declarations of Patee, Navas,

1  and Bennett submitted by Defendant that the Court accords

2  no weight to them.  (See Reply 5-11.)

3

4      The Court also notes both parties submitted so-called

5  "cookie-cutter" declarations.  These declarations

6  inspired less confidence than declarations more closely

7  resembling the facts to which potential class members

8  would actually testify at trial.

9

10     As to the balance of Defendant's declarations, they

11  contradict Plaintiffs' evidence in some respects.  For

12  example, they show (1) some drivers stopped for meal

13  breaks, or at least knew they could but chose not to, and

14  (2) that some drivers claim they ran routes with the

15  named Plaintiffs and stopped for lunch breaks with them.

16  (See Declaration of Mauricio Lara ("Lara Decl.") ¶ 6, Ex.

17  10 to Declaration of Hayley Macon ("Macon Decl.");

18  Declaration of Alberto Lopez ("Lopez Decl.") ¶ 9, Ex. 11

19  to Macon Decl.)

20

21     Second, Defendant avers Plaintiffs do not make a

22  claim on which relief can be granted when Plaintiffs

23  assert Defendant's policies made it impossible to know by

24  the fifth or sixth hour of work whether they had

25  sufficient time to do so.  (Opp'n 20:17-22 citing

26  Brickle, 84 Cal. Rptr. 3d 881.)  Defendant is correct

27  that meal periods need not be provided before conclusion

28

1   of the fifth hour of work.  See id. at 881 ("Plaintiff

2   argues that California law requires defendant to provide

3   meal periods within the first five hours of a shift.  We

4   disagree.").  Accordingly, the portions of Plaintiffs'

5   proof regarding the impossibility of taking a meal break

6   within the first five hours of work are irrelevant.

7

8       Nevertheless, Defendant points to no authority that

9   the meal period can take place at any time after the

10  conclusion of the fifth hour of work.  California Labor

11  Code section 512(a) requires an employer to provide a

12  meal break if an employee works more than five hours per

13  day.  Section 512(b) carves out an exception to 512(a),

14  permitting the Industrial Welfare Commission ("IWC") to

15  permit a meal period commencing after six hours of work.

16

17      The Wage Order in question here, Wage Order 9, at

18  section 11, "Meal Periods," simply paraphrases the

19  language of California Labor Code section 512(a).

20  Accordingly, the IWC has not used its authority under

21  512(b) to create an exception to the 512(a) requirement

22  and permit a meal period to commence after the sixth hour

23  of work.  Defendant must comply with the requirements of

24  512(a) and provide a thirty minute meal period when

25  drivers work for more than five hours. (Mot. 6:6-7.)

26

27

28

1    Defendant also challenges Plaintiffs' evidence
2  drivers did not know until late in their shifts whether
3  they would be able to take a meal break.  Defendant
4  suggests these statements are disingenuous because
5  drivers "ran routes for months at a time and were
6  extremely familiar with their routes and the traffic
7  patterns."  (Opp'n 20:19-20.)  The Court accords this
8  argument little weight; elsewhere, Defendant states,
9  "[d]rivers do not run the same route every day of the
10  week, but usually have two or three different routes per
11  week . . . [t]hese routes remain reasonably common over
12  several months."  (Opp'n 8:10-14.)  The Court can infer
13  from Defendant's description that it would be difficult
14  for Plaintiffs to obtain "extreme[] familiar[ity]" with
15  their routes if they run them only a few times a week and
16  only for a few months.

17

18    Proceeding to the 23(b)(3)(A)-(D) factors, Plaintiffs
19  satisfy at least three of them regarding the overtime
20  class.  First, Plaintiffs have an interest in centralized
21  adjudication of their wage-and-hour claims.  (Mot. 22:10-
22  13.)  As they allege they suffered from common practices
23  and policies, concentration of the litigation in this
24  forum is desirable.  The classes consist of fewer than
25  150 workers, who labored in a single state and sue under
26  a single state's laws.  As far as a class action is

27

28

1  concerned, there are few difficulties in managing the
2  action.

3

4       As to 23(b)(3)(B), however, Defendant directs the
5  Court to two cases involving similar allegations.  The
6  first, <u>Ibarra v. Domino's Pizza Distribution, LLC</u>, Case
7  No. EDCV 08-00070 VAP, was removed to this Court on
8  January 18, 2008, which was approximately a month after
9  Defendant removed the instant action to this Court, on
10 December 5, 2007.  Defendant is represented by the same
11 counsel in this case and the <u>Ibarra</u> matter.  That case
12 does not include allegations of class-wide violations and
13 remains in the discovery stage.  Defendant **initially**
14 directed the Court's attention to <u>Alcazar v. Domino's</u>
15 <u>Pizza, LLC</u>, Riverside Superior Court Case No. CIVRS
16 705269 but stated at the hearing the case related to
17 wrongful termination rather than wage and hour
18 violations.  (<u>See</u> Opp'n 24 n.115.)

19

20     **2.   Inspection Work Class**
21     As to the Inspection Work Class, Plaintiffs allege a
22 uniform practice of requiring pre- and post- trip
23 inspections.  They allege a uniform practice of payment
24 based on weight and mileage that did not include payment
25 for the inspections.  The differences among proposed
26 class members would concern the amount of time spent on
27
28

1  the inspections which would relate to damages and would

2  not defeat certification.

3

4      Defendant seeks to defeat certification by arguing

5  the Inspection Work Class is time-barred.  Defendant

6  asserts the practices on which the Inspection Work Class

7  is premised were retired in September 2005, while

8  Plaintiffs did not assert a claim based on the practice

9  until they filed their FAC in 2008.  Plaintiffs contend

10 their claim is timely because Defendant's unlawful

11 payment practice continued until June 2006.  Even

12 assuming Defendant's version of events is true, the facts

13 still favor certification because it would be more

14 efficient to determine in a single procedure that these

15 claims are time-barred.

16

17     **3.   Section 203 Class (payment upon separation from**

18          **employment)**

19     The facts supporting certification of the Meal Break

20 Class also support certification of a class seeking

21 relief under section 203 of the California Labor Code,

22 which requires prompt payment of wages upon separation of

23 employment.

24

25     It appears Plaintiffs make out a valid claim under

26 section 203 and that therefore common issues predominate

27 and class resolution is superior.  Plaintiffs allege

28

Defendant had a uniform policy of never paying for missed meal breaks, even ones Defendant admits drivers were forced to forego, for example if they were detained in traffic.  The California Supreme Court held in <u>Murphy v. Kenneth Cole Productions, Inc.</u>, 40 Cal. 4th 1094, 1114 (2007) that payments for foregone meal periods are wages, not penalties.  Hence these foregone payments would be wages due at the termination of employment pursuant to section 203.

Plaintiffs also present evidence that could support a finding of wilful failure to pay wages, another element of liability under section 203.  Even after the filing of this action, which gave Defendant notice its failure to pay for foregone meal breaks could violate the law, Defendant has not established a system for determining whether a driver was forced to forego his meal break and hence would be entitled to additional payment.  (<u>See</u> Mot. 23-24.)  The Court certifies the Section 203 Class because common issues predominate and class certification is the superior method of adjudication.

**4.   Section 226 Class (itemized wage statements)**

Plaintiffs assert Defendant failed keep any records of meal periods, and that this practice denied workers accurate wage statements.  Common facts predominate and a class action is the superior manner to adjudicate this

controversy because the facts giving rise to the section
226 Class are the same as those giving rise to the Meal
Break Class.

### IV. CONCLUSION

The Court GRANTS the Motion, certifying (1) the Meal
Break Class; (2) the Inspection Work Class; (3) the
Section 203 Class; (4) the Section 226 Class.

No later than fourteen (14) days after the date of
this Order, counsel shall file with the Court a joint
proposed notice to the certified classes.  No later than
fourteen (14) days from the date of this Order,
Defendants shall produce a list to Plaintiffs' counsel,
in Excel format, of all persons who meet the class
definitions, including the worker's name, address,
telephone number, dates of employment, employee number,
and the last four numbers of his social security number.

Dated: **February 18, 2009**

_____
**VIRGINIA A. PHILLIPS**
**United States District Judge**

40