MICHAEL MALK (State Bar No. 222366)
  mm@malklawfirm.com
**MICHAEL MALK, ESQ., P.C.**
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone: (310) 203-0016
Facsimile: (310) 499-5210

MELISSA M. HARNETT (Bar No. 164309)
  mharnett@wccelaw.com
JESSE B. LEVIN (Bar No. 268047)
  jlevin@wccelaw.com
**WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.**
5567 Reseda Boulevard, Suite 330
Post Office Box 7033
Tarzana, California 91357-7033
Telephone:  (818) 705-6800 • (323) 872-0995
Facsimile:  (818) 996-8266

Attorneys for Plaintiffs Perfecto Espinoza, Cesar Pedroza, and the Class

(Additional Counsel Listed on the Next Page)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECTO ESPINOZA AND CESAR PEDROZA, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>DOMINO'S PIZZA, LLC, a Michigan Limited Liability Company; DOMINO'S PIZZA DISTRIBUTION, LLC, a Michigan Limited Liability Company; and DOES 1-100, inclusive,<br><br>        Defendants, | Case No. EDCV 07-1601-VAP (OPx)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Honorable Virginia Phillips<br>Riverside Division, Courtroom 2<br>Date:   January 31, 2011<br>Time:  2:00 PM |

1

BARRY GOLDSTEIN (Bar No. 141868)

2

goldstein.barry22@gmail.com

300 Lakeside Drive, Suite 1000

3

Oakland, CA 94612

Telephone: (510) 287-4300

4

Facsimile: (510) 835-1417

5

6

Attorneys for Plaintiffs Perfecto Espinoza, Cesar Pedroza,
and the Class

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page(s)**

**I. INTRODUCTION** ………………………………………………………..2

**II. BACKGROUND OF CASE AND SETTLEMENT DISCUSSIONS** ………..2

    (a)   Procedural History ……………………………………………..2

    (b)   Settlement Negotiations ……………………………………….4

**III. SUMMARY OF SETTLEMENT TERMS** ……………………………….5

    (a)   Settlement Amount and Deductions ……………………….....5

    (b)   Calculation of Class Members' Individual Settlement Awards……….5

    (c)   Taxes ……………………………………………….....6

    (d)   Named Plaintiffs' and Class Members' Releases of Claims ………….7

    (e)   Administration of Notice, Objections, and Claims ………………...7

    (f)   Procedure for Requesting Exclusion or Opting Out of Settlement …...8

    (g)   Mailing of Settlement Award Checks ……………………………...9

    (h)   Residual and *Cy Pres* ...........................................................................9

**IV. PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL** …...9

    (a)   The Court's Prior Class Certification Order Satisfies Rule 23 at Settlement ……………………………………………….....10

    (b)   The Settlement is Fair, Reasonable, and Contains No Deficiencies.....................................................................................11

            (i)   Non-collusive, Arms-length and Informed Negotiations Occurred …………………………………………..12

            (ii)   The Strength Of Plaintiffs' Case ………………………13

            (iii)   The Risk, Expense, Complexity and Likely Duration of Further Litigation …………………………………….14

            (iv)   The Extent of Discovery Completed and Stage of the Proceedings ………………………………………….15

            (v)   Experience and Views of Counsel ………………….15

1                (vi)     Reaction of Class Members …………………………16

2     (c)     The Requested Attorney's Fees Are Reasonable…………………..16

3                (i)     Results Achieved …………………………………16

4                (ii)     Risk of Litigation………………………………….17

5                (iii)     Skill Required …………………………………....17

6                (iv)     Quality of Work …………………………………18

7                (v)     Contingent Nature of Representation …………………18

8                (vi)     Attorney Fee Awards in Similar Cases ………………18

9     (b)     The Requested Service Awards Are Reasonable ……………………19

10 **V. THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE** ……...21

11 **VI. APPROVAL OF CLASS NOTICE AND RELATED FORMS** …………...21

12     (a)     The Proposed Procedure Provides Due Process Safeguards ………...22

13     (b)     The Proposed Notice Plan and Claims Process are Appropriate …….23

14 **VII. CONCLUSION** ………..…………………………………………23

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **Table of Authorities**

2

**Cases:**                                                                    **Page No.**

3

4    *Activision Sec. Litig.,*
     723 F.Supp. 1373, 1377-78 (N.D.Cal.1989)………………………………….16

5

6    *Alberto v. GMRI, Inc.,*
     2008 WL 4891201, at *10 (E.D.Cal. 2008)………………………………..15

7

8    *Alexander Mfg., Inc. v. Illinois Union Ins. Co.*
     666 F.Supp.2d 1185, (D.Or. 2009) …………………………………………..12

9

10   *Baganha v. California Milk Trans.*
      (E.D. Cal., 1:01-CV-05729 AWI LJO)…………………………………….19

11

12   *Benitez et al. v. Wilbur,*
     1:08-CV-1122 LJO GSA (E.D. Cal., 2009)……………………………….19, 21

13

14   *Birch v. Office Depot, Inc.,*
     Case No. 06cv1690 DMS (WMC),
15   Doc. No. 48, ¶ 13 (S.D.Cal. Sept. 28, 2007)…………………………….19

16

17   *Brinker v. Superior Court,*
     165 Cal.App.4th 25 (2008)………………………………………………….17

18

19   *Chavez et al. v. Petrissans et al,*
      (1:08-CV- 00122 LJO-GSA) E.D. Cal. 2009……………………………..19, 21

20

21   *Craft v. County of San Bernardino*
     (2008) 624 F.Supp.2d 1113, 1127 (C.D.Cal.,2008) ………………………16

22

23   *Hanlon,*
     150 F.3d at 1029; *Staton,* 327 F.3d at 952 …………………………………..15

24

25   *Hanlon v. Chrysler Corp.*
     150 F.3d 1011, 1020 (9th Cir. 1998)…………………………………………..9

26

27   *Hernandez v. Chipotle,*
     (2010) 189 Cal.4th 75……………………………………………………………..17

28

*Hughes v. Microsoft Corp.*,
2001 WL 34089697 (W.D.Wash. 2001) ……........………………………..15

*Ingalls v. Hallmark Mktg. Corp.*,
08cv4342 VBF (Ex), (C.D.Cal. 2009)  .......................………….19, 21

*Knight v. Red Door Salons, Inc.*,
 2009 WL 248367 (N.D.Cal.2009)…………………………………14, 15

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234, 1239 (9th Cir. 1998)…………………………………..15

*Michael Milken & Assocs. Sec. Litig.*,
 150 F.R.D. 57 (S.D.N.Y. 1993)……........……………………………23

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*
688 F.2d 615, 625 (9th Cir. 1982)…………………………………..11, 12

*Powers v. Eichen*,
229 F.3d 1249, 1256 (9th Cir.2000)…………………………………16

*Randall Willis et al. v. Cal Western Transport; Cal Western Transport*,
Coordinated Case No. 1:00-cv-05695 AWI LJO (E.D. Cal. 2003) ….…..….19, 21

*Rippee v. Boston Mkt. Corp.*,
Case No. 05cv1359 BTM (JMA) (S.D.Cal. Oct. 10, 2006)……………………19

*Satchell v. Federal Express Corp.*
2007 WL 1114010, (N.D.Cal. 2007)…………………………………..12

*Six Mexican Workers v. Arizona Citrus Growers*,
904 F.2d 1301 (9th Cir.1990)…………………………………………15

*Sumitomo Copper Litig.*,
74 F.Supp.2d 393, 396-398 (S.D.N.Y.1999)…………………………18

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993)…….........…………………………...23

*Vasquez v. Aartman*
 (1:02-CV05624 AWI LJO) (E.D. Cal 2005)…………………………………18

*Vasquez v. Coast Valley Roofing, Inc*.
2010 WL 892101 (N.D. Cal 2010) …………………………………………15-17

*Vizcaino v.Microsoft Corp.,*
290 F.3d 1043, 1047 (9th Cir.2002)…………………………………………15

*West v. Circle K Stores, Inc.*, Dist. Court,
Case No. Civ. S-04-0438 WBS GGH (E.D. Cal. 2006)…..…………………19

## Statutes and Regulations:

Lab. Code §§ 226.7, 512  ……………………………………………………2

IWC Wage Order No. 9………………………………………………………2

Lab. Code §§ 226 & 226.3………………………………………………3,10

Lab. Code §§ 201-203………………………………………………1, 11

Bus. & Prof. Code § 17200 *et seq* …………………………………………3

Fed.R.Civ.P. 23    ………………………………………2, 8, 10, 21

Fed.R.Civ.P 30(b)(6)………………………………………………3, 4, 20

Fed.R.Evid. 201………………………………………………………17

## Treatises:

Alba Conte and Herbert Newberg, *Newberg on Class Actions* (4th Ed.)……..8, 10

*Manual for Complex Litigation*, Fourth (Fed. Judicial Center 2004)………..10

TO DEFENDANT AND ITS ATTORNEYS OF RECORD: NOTICE IS HEREBY GIVEN that on January 31, 2011, at 2:00 p.m., or as soon thereafter as counsel may be heard by the Honorable Virginia A. Phillips in Courtroom 2 of the above-entitled court, located at 3470 12th Street, Riverside, California. Plaintiffs, on behalf of themselves and all others similarly situated, will and hereby move the Court for an order:

1.  Preliminarily approving the settlement of the certified classes as fair, adequate, and reasonable, based upon the terms set forth in the parties' Joint Stipulation of Class Action Settlement Agreement ("Settlement Agreement"), including payment by Domino's Pizza, LLC, ("Dominos" or "Defendant") of $1,450,000 ("Settlement Amount"), plus the employer's share of payroll taxes arising from such payments;

2.  Preliminarily approving the Enhancement Awards of $10,000 to each of the two Plaintiffs in recognition of their service to the Settlement Class;

3.  Preliminarily approving Class Counsel's request for up to 30% of the Settlement Amount as attorneys' fees, plus reimbursement of litigation costs up to $20,000;

4.  Appointing Simpluris, Inc, as the third-party administrator for mailing notices and for claims administration, approving that up to $15,000 be deducted from the Settlement Amount for the costs of claims administration, and approving that the fees and costs of the claims administrator will be paid from the Settlement Amount; and

5.  Approving the proposed Class Notice, Claim Form and Opt-Out Form, and ordering they be disseminated to the class as provided in the Settlement Agreement.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities in support of the motion, the supporting Declaration of Michael Malk including all exhibits thereto, the Court's files and records herein, and upon such further papers and oral argument as may be presented to the Court.

DATED:  December 28, 2010          MICHAEL MALK, ESQ., APC


By _Michael Malk_____
　　 Michael Malk
Attorneys for Plaintiffs Perfecto Espinoza
and Cesar Pedroza

---

NOTICE OF MOTION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiffs Perfecto Espinoza and Cesar Pedroza ("Plaintiffs"), through their counsel of record ("Class Counsel"), seek preliminary approval of the proposed class action settlement of wage and hour claims alleged against Defendant, Domino's Pizza, LLC ("Domino's" or "Defendant").  The Stipulation and Settlement Agreement of Class Action Claims ("Settlement Agreement") is attached as **Exhibit 1** to the Declaration of Michael Malk ("Malk Decl.").  True and correct copies of the Proposed Notice of Class Action Settlement  is attached as **Exhibit 2**, the Claim Form as **Exhibit 3**, and the Opt-Out Form as **Exhibit 4**.

The proposed Settlement Agreement and plan of distribution was the product of non-collusive negotiations by informed counsel, and the settlement, taken as a whole, is fair, reasonable and adequate to all.  The proposed Settlement Agreement satisfies all of the criteria for preliminary settlement approval under Federal Rule of Civil Procedure 23 and falls well within the range of reasonableness.  By this motion, in which Defendant concurs, Plaintiffs seek: (1) preliminary approval of the Agreement; (2) approval of the parties' proposed form and method of notifying Settlement Class members of the settlement; (3) an order scheduling the hearing date for Final Approval of the Class Settlement; and (4) entry of a preliminary approval Order.

## II.  BACKGROUND OF CASE AND SETTLEMENT DISCUSSIONS

**A.     Procedural History**

The above captioned action ("Action") was filed by Plaintiffs on October 30, 2007 as a collective action on behalf of all those similarly situated alleging Defendant's:  (1) failure to provide off-duty meal breaks during employment (Lab. Code §§ 226.7, 512 and Industrial Welfare Commission ("IWC") Wage Order No. 9); (2) failure to issue accurate, itemized wage statements (Lab. Code §§ 226 & 226.3); (3) failure to pay wages at the time of termination (Lab. Code §§ 201-203);

1   and (4) unfair business practices (Bus. & Prof. Code § 17200 *et seq.*) ("Complaint").

2   Defendant filed an Answer denying any liability or wrongdoing of any kind

3   associated with the claims alleged in the Complaint. Defendant removed the case on

4   December 5, 2007.

5        On October 20, 2008, Plaintiffs, with Defendant's consent given with a full

6   reservation of rights, filed a proposed First Amended Complaint adding a cause of

7   action for alleged unpaid wages relating to non-driving work performed by drivers

8   before and after each shift, from the period of June 25, 2004, onwards and amending

9   the scope of the class period for their meal break violation claims so that the date of

10  the class period for those claims continued to the present.  The First Amended

11  Complaint was accepted for filing on December 5, 2008.  By asserting such claims,

12  Plaintiffs were risking an adverse verdict and individual liability for attorneys' fees.

13       Plaintiffs filed a motion for certification on October 20, 2008, and the Court

14  certified the Class pursuant to Fed. R. Civ. Proc. 23 on February 18, 2009, with four

15  sub-classes as defined below (*See* Section IV.A., *infra*).

16       Defendant subsequently petitioned the United States Court of Appeals for the

17  Ninth Circuit for permission to appeal the Court's grant of Plaintiffs' certification

18  motion under Fed. R. Civ. P. 23(f), which the Ninth Circuit denied on May 28,

19  2009.  After this Court approved the Notice of Class Action to be disseminated to

20  the Class, notices were sent to 123 Class Members of whom 3 opted-out.  Following

21  dissemination of the Class notice, Plaintiffs propounded post certification discovery,

22  and took a deposition of Defendant Pursuant to FCRP *Rule 30(b)(6)*.  In December

23  2009, Class Counsel was informed that Defendants' prior attorneys, Seyfarth Shaw,

24  were disassociating from the case, and Snell-Wilmer would associate into the case.

25       Throughout the case, the Parties conducted extensive formal discovery and

26  investigation of the facts and law . (*See* Malk Decl. ¶ 2.)  Since October 2007, Class

27  Counsel conducted a thorough investigation into the facts of this putative class

28  action, including procuring witness statements from over 20 percent of the Class

1   members, and reviewing voluminous documents and propounding and responding to

2   extensive formal written discovery, and took and defended over ten depositions,

3   including  two depositions per FRCP Rule 30(b)(6), and the depositions of both

4   Class representatives (*Id.* at ¶ 2).

5   **B.      Settlement Negotiations**

6          The parties attended a mediation with veteran class action mediator and

7   Stanford law professor Michael E. Dickstein in Los Angeles on June 26, 2008, prior

8   to Plaintiffs filing their Motion for Class Certification.  (*Id.* at ¶ 3)  The parties did

9   not reach a settlement during the first mediation and, the parties scheduled another

10  mediation to take place within two months.  (*Id.* at ¶ 3)  Defendants cancelled the

11  second mediation with less than one week's notice, after which Plaintiffs filed their

12  Motion for Class Certification, and successfully opposed Defendant's Petition for

13  Permission to Appeal the class certification (*Id.* at ¶ 3)  The parties held a second

14  mediation nearly two years later, on April 20, 2010, which ultimately resulted in the

15  Settlement Agreement.  At mediation, Defendant was represented by Frank Cronin

16  and Matt Bennett of Snell and Wilmer, LLP,  Daniel Katz of Williams & Cannolly,

17  LLP, as well as Domino's General Counsel.  (Malk Decl. ¶ 3)  Plaintiffs attended

18  the mediation in person, and were represented by Michael Malk of the Malk Law

19  Firm, Melissa M. Harnett and Jesse B. Levin of Wasserman, Comden, Casselman &

20  Esensten, L.L.P.("WCCE"), and  settlement consultant and Class Action veteran

21  Barry Goldstein from Goldstein, Demchak, Baller, Borgen & Dardarian,.  (*Id.* at ¶ 3)

22  The parties reached a tentative settlement after 12 hours of negotiations, and

23  continued to negotiate the details of the class settlement for another several months[1].

24  (*Id.* at ¶ 3)

25  _____

26  [1] Despite reaching a tentative settlement on April 20, 2010, the parties continued to
    negotiate the terms of the settlement agreement for several months, and required the

27  involvement and assistance of mediator Dickstein on two more occasions. (Malk

28  Decl. ¶ 3)

### III.  SUMMARY OF SETTLEMENT TERMS

The proposed settlement resolves all claims of the Plaintiffs and Class Members against Domino's as set forth in the Complaint filed in the Action.  The details of the settlement are contained in the Settlement Agreement (Malk Decl., Exhibit 1)  The settlement terms may be summarized as follows:

**A.      Settlement Amount and Deductions**

Domino's will pay up to $1,450,000.00 (the "Maximum Settlement Amount" or "MSA") and will pay the employer's share of payroll taxes arising from such payments. (Malk Decl., Exhibit 1)  Plaintiffs are requesting that the Court award a $10,000 as a Service Award to each of the two Named Plaintiffs, to be deducted from the MSA.  Class Counsel request that the Court award Class Counsel fees in the amount of 30% of the Maximum Settlement Amount, plus actual costs expended estimated to be $20,000.  (*Id.* at ¶ 4)  Plaintiffs also request that the Court approve Claims Administration costs, not to exceed $15,000, to be deducted from the Maximum Settlement Amount.  (*Id.* at ¶ 4)  Once these deductions are made, the balance of the Maximum Settlement Amount ("Net Settlement Amount"), approximately $955,000.00, will be available for distribution to Class Members on a pro-rata basis.  (*Id.* at ¶ 4).

**B.      Calculation of Class Members' Individual Settlement Awards**

Assuming the Court approves Plaintiffs' requested Service, and Class Counsel's attorney's fees and expenses, and after deducting the costs of Claims Administration, a Net Settlement Amount of approximately $955,000.00 will be allocated among all Class Members.  (*Id.* at ¶ 4).

The Net Settlement Amount ("NSF") will be divided by the total number of weeks all Class Members worked from October 29, 2003 through the Date of Preliminary Approval (the "Class Period") to arrive at a value per week.  That value per week will then be multiplied by the number of weeks worked by each Class Member.  (Malk Decl. ¶ 5.).  The resulting amount will be the Class Member's

Settlement Award ("Settlement Award").  The number of weeks worked will be determined from Domino's records (although Class Members who believe Domino's records are in error will have an opportunity to contest those records). Class Members should actually receive approximately $38.20 for each week worked during the Settlement Class Period (minus applicable payroll tax deductions).  (*Id.* at ¶ 5).

Class members that are current Domino's employees, unless they affirmatively exclude themselves from the settlement, will automatically receive payment in the amount of this appropriate base weekly amount multiplied by the number of weeks the Qualified Claimant worked during the Covered Period.  (Malk Decl., Exhibit 1, ¶ 6).  Former Domino's employees must file a valid and timely Claim Form/Consent to Join Form to receive their share of the settlement.  (*See* Malk Decl. Exhibit 3).

Class Members will thus receive approximately $1,986.40 for each year worked during the class period, and approximately $13,904.08 for Class members who have worked for Defendant for all seven years of the Class period.

## C.     Taxes

The resulting amount will be the Class Member's Settlement Award ("Settlement Award").  The number of weeks worked will be determined from Domino's records (although Class Members who believe Domino's records are in error will have an opportunity to contest those records).  Class Members should actually receive approximately $38.20 for each week worked during the Settlement Class Period (minus applicable payroll tax deductions).  (Malk Decl. ¶ 5).

## D.     Named Plaintiffs' and Class Members' Releases of Claims

Plaintiffs and all Settlement Class Members who submit valid and timely Claim and Release Forms by the Claims Deadline (60 days after the first notice mailing) will release their wage-related Claims.  (Malk Decl., Exhibit 1, Sec. I IV; V.D.1).  Class Members who do not opt out of the settlement by the Opt-Out or

1   Exclusion Deadline (60 days after the first notice mailing) release their Claims.  (*Id.*

2   at ¶ 6).  Additionally, assuming the Court approves the requested Service Award,

3   the Plaintiffs will provide Domino's a general release of all claims against it.  (*Id.* at

4   ¶ 6).

5   **E.      Administration of Notice, Objections, and Claims**

6          The actual costs of administration, not to exceed $15,000, will be deducted

7   from the MSA.  (Malk Decl. ¶ 7).  The parties have selected Simpluris, Inc., an

8   experienced claims administrator, to serve as the Claims Administrator.  (*Id at ¶ 8.)*

9   Within fifteen (15) days of preliminary approval, Simpluris, Inc. will mail all Class

10  Members the class notice, Claim and Release, and Opt-Out forms.  (*Id at  ¶* 8.*)*  The

11  Claim and Release Form will provide an estimate of the individual Class Member's

12  share of the settlement.  (*Id at  ¶* 8.*)*  Class Members may challenge and seek

13  correction of the data regarding the number of weeks they worked during the

14  Settlement Class Period, with all challenges to be determined by Defendant, based

15  upon Defendant's records and any information Class Members provide.  Former

16  employees have sixty (60) days from the notice mailing to submit a claim, while

17  current employees of Dominos are automatically opted-in the settlement and do not

18  need to submit a claim form, although they have sixty (60) days to opt-out of the

19  settlement.  As the settlement is on a non-reversionary basis, no unclaimed monies

20  will go to Defendant.  All Claim and Release Forms submitted to Simpluris, Inc. by

21  the Claim Deadline shall be deemed filed in this Action.

22         The notice informs each Settlement Class Member of his or her right to object

23  to the settlement.  (Malk Decl., Exhibit 2, Sec. VI*)*.  Settlement Class Members who

24  wish to object to the Settlement must object in writing, stating the basis for the

25  objection, file the objection with the Court, mail to the Settlement Administrator and

26  both parties, and be postmarked no later than fourteen (14) days prior to the final

27  fairness and approval hearing.  (*Id.* at ¶ 9).  Settlement Class Members who fail to

28  file and serve timely written objections in the manner specified in the Settlement

1   Agreement shall be deemed to have waived any objections and shall be foreclosed

2   from making any objection (whether by appeal or otherwise) to the Settlement.  (*Id.*

3   at ¶ 9).

4   **F.      Procedure for Requesting Exclusion or Opting Out of Settlement**

5           For all Class members who wish to exclude themselves from the settlement

6   Agreement must submit an Election to be Excluded Form (also call "Opt-Out

7   Form") (Malk Decl. Exhibit 4) opting out of the Settlement Class no later than the

8   Exclusion Deadline (60 days after the notice mailing).  (Malk Decl., Exhibit 1 ¶ Sec.

9   V.E.).  Simpluris, Inc. will file the date-stamped originals of any Opt-out Statements

10  with the Clerk of the Court not later than ten (10) business days prior to the date set

11  for the Final Approval Hearing.  (*Id.* at ¶ 10).  Simpluris, Inc. will retain copies of

12  all Opt-out Statements in its files until such time as it is relieved of its duties and

13  responsibilities under this Settlement Agreement.  (*Id.* at ¶ 10).  To the extent a

14  Class Member submits an Opt-out Statement with language that differs from the

15  language set forth in the Settlement Agreement, either party may seek review of the

16  Court to have the Opt-out Statement declared valid or invalid.  (*Id.* at ¶ 10).  All

17  Class Members who do not timely opt-out of the proposed settlement shall be bound

18  by the resolution of any and all issues arising in connection with the Settlement

19  Class' California law claims, including for attorneys' fees and costs.  (*Id.* at ¶ 10).

20  **G.      Mailing of Settlement Award Checks**

21          Current employees who do not file opt-out forms, and former employees who

22  submit valid Claim and Release Forms within sixty (60) days of initial mailing will

23  receive a Settlement Award.  Simpluris, Inc. will provide the Parties with their

24  checks within twenty-five (25) days after the Effective Date.  (*Id.* at ¶ 11).  Within

25  ten (10) days of receiving information from the Claims Administrator, Domino's

26  will transfer the aggregate Settlement Amount claimed by Class Members to

27  Simpluris, Inc.  (*Id.* at ¶ 11).  Simpluris, Inc. will then mail checks to Class

28  Members within twenty-five (25) calendar days of the Effective Date of the

1    Settlement.  (Malk Decl. ¶ 11).

2    **H.    Residual and *Cy Pres***

3        Because this settlement is non-reversionary, any funds from undeliverable

4    Class notices remaining after the notice period will not return to the Defendant but

5    will be paid to a *cy pres* recipient approved by the Court (Malk Decl, Exhibit 1, Sec.

6    III.2., Sec. V.E.3.).  The parties recommend St. Jude's Children's Research

7    Hospital.  In the event that the Court does not approve a *cy pres* distribution to St.

8    Jude's Children's Research Hospital, then the funds will be distributed to another

9    non-profit organization mutually agreed upon by the Parties and approved by the

10   Court[2].  (Malk Decl. ¶ 12).  Settlement checks that have not been cashed within

11   ninety days of receipt will also be distributed to the court approved *cy pres* recipient

12   (Malk Decl. Exhibit 1, Sec. III.2.).  In the event that the Court does not approve of

13   distribution of claimed but uncashed checks to a *cy pres* recipient, then Simpluris

14   will pay the amount of the uncashed checks to the Unclaimed Property Division of

15   the California Controller's Office.  (Malk Decl. at ¶ 12).

16   ## IV.  PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

17       A class action may not be dismissed, compromised or settled without the

18   approval of the court.  *See* Fed. R. Civ. Proc. 23(e).  This process safeguards class

19   members' procedural due process rights and enables the court to fulfill its role as the

20   guardian of the class' interests.  *See* Alba Conte and Herbert Newberg, *Newberg on*

21   *Class Actions* (4th Ed.) § 11:24, et seq. (2002) ("Newberg"); *Manual for Complex*

22   *Litigation*, Fourth (Fed. Judicial Center 2004) ("Manual") § 21.63.

23       With this motion, Plaintiffs request that the Court take the first step in the

24   settlement approval process and grant preliminary approval of the proposed

25   Settlement, including Plaintiffs' application for a $10,000 Service Award to each

26   Named Plaintiff,  and payment of Class Counsel's attorney's fees and expenses.

27   _____

28   [2] Plaintiff's counsel suggests Bet Tzedek Employment Rights Project.

1  The purpose of the Court's preliminary evaluation of the proposed Settlement is to

2  determine whether it is within the "range of reasonableness" and, thus, whether

3  notice to the Class of the terms and conditions of the Settlement, and the scheduling

4  of a formal fairness hearing, are worthwhile.  *See Newberg* § 11:26 at p. 39.  The

5  settlement herein provides substantial monetary relief that is fair, reasonable and

6  adequate.

7  **A.**    **The Court's Prior Class Certification Order Satisfies Rule 23 at**

8         **Settlement**

9         Under Rule 23(e), the Court has the responsibility to determine whether the

10 settlement class satisfies the requirements of Rule 23. *Hanlon v. Chrysler Corp.*,150

11 F.3d 1011, 1020 (9th Cir. 1998).  Here, the Court has benefitted from a fully

12 contested class certification motion.  The Court issued a forty (40) page order

13 addressing the parties' class certification arguments. See Class Certification Order,

14 Dkt. 54.  The Court certified the following classes:

15     (a)    All current and former non-exempt employees of Domino's who were

16            based out of  the Southern California Distribution Center in Ontario,

17            California, or the Northern California Distribution Center in Hayward,

18            California, and whose job responsibilities at any time during the period

19            from October 29, 2003, through the date of preliminary approval

20            (hereinafter "Covered Period") included driving trucks and/or acting as

21            an assistant driver or a driver helper (hereinafter "Route Pro") on the

22            trucks which delivered supplies from a distribution center to various

23            establishments in California (the "Meal Break Class");

24     (b)    All current and former employees of Domino's, paid on a piece-rate

25            basis, who were based out of the Southern California Distribution

26            Center in Ontario, California, or the Northern California Distribution

27            Center in Hayward, California, and who performed at least one

28            inspection of a truck before or after driving a route between June 25,

1    2004, through June 1, 2006 (the "Inspection Work Class");

2    (c)    The "California Labor Code Section 203 Class," coextensive with the

3    Meal Break Class; and

4    (d)    The "California Labor Code Section 226 Class," coextensive with the

5    Meal Break Class.

6    (Dkt. 54 at pages 2-3.)

7    The Court's examination of the class certification in that order is sufficient to

8    support this class action settlement.   The parties request that each class definition be

9    slightly modified to reflect that the end-date of the class period is the date of this

10   Court enters an order of preliminary approval to ensure that the classes do not

11   continue in perpetuity and that future claims are not released.

12   **B.    The Settlement is Fair, Reasonable, and Contains No Deficiencies**

13   Citing the Fed.R.Civ.P. 23(e) threshold for settlement approval, the Ninth

14   Circuit explained that "the universally applied standard is whether the settlement is

15   fundamentally fair, adequate and reasonable." *Officers for Justice v. Civil Service*

16   *Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  At

17   the same time, "[t]he very essence of a settlement is compromise, a yielding of

18   absolutes and an abandoning of highest hopes." *Id.* at 624.  The Ninth Circuit's

19   standard of evaluation of the fairness, adequacy, and reasonableness of a settlement

20   requires this Court to balance several factors: the strength of plaintiffs' case; the risk,

21   expense, complexity, and likely duration of further litigation; the risk of maintaining

22   class action status throughout the trial; the amount offered in settlement; the extent

23   of discovery completed, and the stage of the proceedings; the experience and views

24   of counsel; the presence of a governmental participant; and the reaction of the class

25   members to the proposed settlement. *Officers for Justice*, 688 F.2d at 625; *see also*

26   *Hanlon*, 150 F.3d at 1026.

27   **1.    Non-collusive, Arms-length and Informed Negotiations Occurred**

28   This settlement was reached as a result of arms-length negotiations between

1    the parties.  The parties engaged in two separate mediations with Michael Dickstein,

2    Esq., one of the most respected mediators in Northern California.  (Malk Decl. ¶

3    14).  The parties left the first mediation without any agreement, and litigated for

4    another two-years, including Plaintiffs filing the class certification motion and

5    Defendant's unsuccessful Petition for Permission to Appeal the ruling granting class

6    certification to the Ninth Circuit Court of Appeals.  (*Id.*)

7         Only after the second mediation with Mr. Dickstein, which took place after

8    almost three years of litigation and after the parties reached an agreement regarding

9    a trial schedule, were the parties able to reach a settlement.  (*Id.*)  "The assistance of

10   an experienced mediator in the settlement process confirms that the settlement is

11   non-collusive."  *Satchell v. Federal Express Corp.*, 2007 WL 1114010, at *4

12   (N.D.Cal. 2007);  *see also Alexander Mfg., Inc. v. Illinois Union Ins. Co.*, 666

13   F.Supp.2d 1185, 1202 (D.Or. 2009).  Given the parties' extensive mediation efforts

14   with a neutral of Mr. Dickstein's caliber, and the three years of contentious litigation

15   in this matter, the Court should find that the settlement is non-collusive and the

16   result of arms-length negotiations.

17        **2.    The Strength Of Plaintiffs' Case**

18        Plaintiffs' case was strong on several fronts.  Firstly, Plaintiffs have

19   testimonial evidence from over 20% of the Class that 1) they were never informed

20   of their right to an off-duty meal break commencing by the fifth and tenth hours of

21   work, and 2) that time pressures of the Dominos delivery schedule were so great so

22   as to make time off-duty meal breaks impossible, given the maximum on-duty time

23   of 14 hours allowed by the Department of Transportation ("DOT") (Malk Decl. ¶

24   15).  Further, Plaintiffs have evidence that, for two years of the Class Period, drivers

25   were not paid for pre- and post- trip safety inspections.(Id.)

26        Defendant produced voluminous time records of the putative class

27   demonstrating that, during each year of the class period, the average on-duty time

28   for drivers was between 10 and 13 hours.  (Id.)  Defendant argued that that, given

1   the maximum DOT on-duty time of 14 hours, the drivers almost always returned to

2   the Dominos center with one to three hours left of their possible on-duty time, and

3   that the drivers could thus have taken two thirty-minute off-duty breaks during their

4   shift without violating the DOT maximum drive time.  (Id.)  While Plaintiffs

5   disagree, Defendant claims that Defendant's centralized routing system did *not*

6   deprive Plaintiffs and Class of timely off-duty meal breaks.  To that end, the Court

7   noted in its order (at page 18) that:

8       Of course, if the Court later finds Defendant's centralized system did
         not so deprive the proposed class of legally-required meal breaks, then
9       decertification might be merited. (Certification Order, p. 18).

10  Defendant's subsequent counsel repeatedly articulated their intention to file a

11  motion to decertify the class on that basis.  (Malk Decl. ¶ 15).

12      Regarding the pre- and post-trip inspections, Plaintiffs acknowledge that the

13  piece-rate compensation systems of many large trucking companies are currently

14  being challenged in several courts in California for not paying for non-driving work

15  such as pre- and post-trip safety inspections.  Like other trucking companies,

16  Dominos claims that its piece-rate system always compensated its drivers for pre-

17  and post-trip safety inspections.  Unlike other companies, however, Domino's

18  started paying its drivers for pre- and post-trip safety inspections separately (i.e.,

19  outside the piece-rate) during the Class Period without lowering its piece-rate pay.

20  Domino's argued that its piece-rate system changed at the time it started paying

21  separately for inspections to incentivize drivers, so that, according to Domino's,

22  nothing can be inferred from its switch to paying separately for inspections.  To

23  date, there have not been any decisions regarding the merits of this issue[3].  (Id. at ¶

24

25  _____

    [3] Class Counsel believes that the first court to determine the legality of a piece-rate
26  compensation system which does not separately compensate for non-driving tasks
    will be the Superior Court of Tulare in connection with cross Motions for Summary
27  Judgment in the case Carson, et al. v. Knight Transportation, Inc.  Michael Malk, is
    co-counsel for the certified class in that case.  Malk Decl. ¶ 17.
28

16.

### 3. The Risk, Expense, Complexity and Likely Duration of Further Litigation

Prior to scheduling the second mediation in this case, the parties met and conferred regarding a discovery cutoff and trial date to present to this Court for approval. (*See* Dkt. 74, filed March 24, 2010). Trial of a class action, however, is complex and risky. Although Plaintiffs have been successful in the major motions thus far in the case, trial always carries with it the risk of loss. Moreover, Defendants have indicated they would likely litigate this case through appeal if Plaintiffs prevailed at trial. Thus, even a trial win would have resulted in further time consuming, expensive, and risky litigation. It could have been years before this case was resolved on appeal. Given that the parties have already litigated for more than three years, and given the relative size of this class action, it is appropriate for this matter to be resolved now, without the costs and risk associated with trial and appellate litigation. Settling the case now provides Class Members with the benefit of definite recovery without further delay.

### 4. The Extent of Discovery Completed and Stage of the Proceedings

Courts review the extent of the discovery completed in a class action settlement to ensure that "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). This case was near the end of discovery when it settled, and the parties had stipulated to a discovery cutoff and trial schedule. As outlined above, the parties have conducted over ten depositions and exchanged thousands of documents[4]. Given the length of the litigation and the late stage of the proceedings

---

[4] Because each of Defendant's trucks at the Southern California center was equipped with an on-board computer system detailing each truck's start and stop times throughout the day, a print-out reflecting the activity of one truck through a shift could be several pages. Needless to say, all printouts of all drivers over the class period were extremely voluminous. (Malk Decl. ¶ 18)

1    at the time of settlement, the parties were in an optimal position to make an

2    informed decision about settlement.

3

4         **5.     Experience and Views of Counsel**

5         In approving Michael Malk, Barry Goldstein[5], and Melissa Harnett of WCCE

6    as Class Counsel, this Court has previously recognized each the adequacy and

7    extensive experience of each attorney and firm.  (*See* Class Certification Order, Dkt.

8    54 at 30-31, and Dkt. 74 (Order Appointing Additional Class Counsel)).   Each firm

9    has extensive experience in complex wage and hour class litigation.  (Id).

10   Defendants likewise agree that the settlement is in the best interests of their clients.

11   (*See* Malk Decl., Exhibit 1 section II (12)).  Counsel's opinion is afforded

12   considerable weight. *See, e.g., Alberto v. GMRI, Inc.*, 2008 WL 4891201, at *10

13   (E.D.Cal. 2008); *Hughes v. Microsoft Corp.,* 2001 WL 34089697, at *7 (W.D.Wash.

14   2001).  Accordingly, this factor weighs in favor of the reasonableness of the

15   settlement.

16        **6.     Reaction of Class Members**

17        Plaintiffs in this case have signed the Settlement Agreement and have thus

18   endorsed the settlement. As for the rest of the Class, the parties respectfully request

19   that the Court review this factor at Final Approval after Class Members have had the

20   opportunity to review the class notice and respond accordingly.

     **C.    The Requested Attorney's Fees Are Reasonable**

21   Attorneys' fee awards in the Ninth Circuit typically range from  20% to 33.33% of

22   the total settlement value, with 25% considered the benchmark. *Powers v. Eichen,*

23   229 F.3d 1249, 1256 (9th Cir.2000); *Hanlon,* 150 F.3d at 1029; *Staton,* 327 F.3d at

24   952.  However, the exact percentage varies depending on the facts of the case, and

25   in "most common fund cases, the award exceeds that benchmark."  *Knight v. Red*

26

27   ――――――――――――――
     [5] *See* Dkt. No. 45-3 (Declaration of Barry Goldstein in Support of Plaintiffs' Motion

28   for Class Certification).

*Door Salons, Inc.,* 2009 WL 248367 (N.D.Cal.2009); *see also In re Activision Sec. Litig.,* 723 F.Supp. 1373, 1377-78 (N.D.Cal.1989) ("nearly all common fund awards range around 30%"). The Honorable Stephen Larson noted that the 25% benchmark is typically used in cases where the settlement exceeds $10 million, while "[c]ases of under $10 Million will often result in result in fees above 25%." *Craft v. County of San Bernardino* (2008) 624 F.Supp.2d 1113, 1127 (C.D.Cal.,2008).

When assessing whether the percentage requested is reasonable, courts look to factors such as: (a) the results achieved; (b) the risk of litigation; (c) the skill required, (d) the quality of work; (e) the contingent nature of the fee and the financial burden; and (f) the awards made in similar cases. *Vizcaino v.Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir.2002); *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301 (9th Cir.1990).

Although Plaintiffs request that the Court defer ruling on Plaintiffs' requested attorneys' fees until Plaintiffs file their Motion for Attorneys' Fees, Plaintiffs will briefly address these factors.

### 1.    Results Achieved

The chief individual claims in this case concerned Defendants' alleged failure provide timely, off-duty meal breaks to employees.  Given that these claims, when considered against Defendant's defendants of average route times, as well as the uncertainty of the meal break standard, these claims would not generally produce substantial damages awards.  See *Vasquez v. Coast Valley Roofing, Inc.* 2010 WL 892101 (N.D. Cal 2010), *10.  The recovery of $1,450,000, which will provide the potential claimant employees with a net recovery of approximately $1,986.40 for each year worked during the class period, and approximately $13,904.08 per employee on average, is a favorable result.

### 2.    Risk of Litigation

Plaintiffs and their counsel took significant risks in pursuing this case. The chief claims involved providing timely off-duty meal periods, which is currently

1   pending before the California Supreme Court[6].  *See Brinker v. Superior Court,* 165

2   Cal.App.4th 25 (2008)(certiorari granted).  While Class Counsel cannot predict the

3   outcome of the *Brinker*, a possible decision affirming the lower appellate court's

4   ruling would substantially lower the potential recovery in this case[7].

5          **3.     Skill Required**

6          The Court in *Vasquez* noted that the attorneys in that case were forced to,

7   "litigate cutting-edge legal theories surrounding rest and meal periods, and navigate

8   challenging issues of proof in light of the limited recording keeping by Defendant.

9   The case also required intensive extrapolation from existing records."  *Vasquez*  at

10  *11.

11         In the instant case, Plaintiffs not only litigated "cutting-edge" legal theories

12  relating to meal breaks and alleged off-the-clock work regarding a piece-rate

13  compensation system, Plaintiffs did so despite the records from Dominos which,

14  despite being incredibly voluminous, were – at least according Dominos – not

15  accurate with regard to meal breaks and safety inspections.  Moreover, Plaintiffs

16  successfully litigated this case through class certification, and successfully defeated

17  Defendants' Request for Permission to Appeal to the Ninth Circuit Court of

18  Appeals.  (Malk Decl. ¶ 13).

19         **4.     Quality of Work**

20         In addition to successfully obtaining class certification and successfully

21  opposing Defendants' Request for Permission to Appeal to the Ninth Circuit Court

22  of Appeals, Plaintiffs developed sophisticated legal claims.  These include claims

23  for off-the-clock work, despite Dominos piece-rate compensation system which

24  _____

[6] Lower appellate courts continue to issue rulings regarding meal breaks.  *See*

25  *Hernandez v. Chipotle*, (2010) 189 Cal.4th 751, which essentially adopted the meal
    break standard urged by the employer in *Brinker*.

26
[7] This is so not only because of the meal break component, but also because the

27  causes of action for itemized wage statement violations and waiting time penalties

28  are derivative of the meal break claims.

1   Dominos claims compensated drivers for all hours worked, and despite the lack of

2   any substantive case law on-point addressing payment for non-driving work in a

3   piece-rate compensation system.

4          **5.        Contingent Nature of Representation**

5          Class Counsel prosecuted the case on a contingency basis, which presented

6   considerable risk. *Vasquez v. Coast Valley Roofing*, *supra*, at *10 ("No one expects

7   a lawyer whose compensation is contingent on the success of his services to charge,

8   when successful, as little as he would charge a client who in advance of the

9   litigation has agreed to pay for his services, regardless of success. Nor, particularly

10  in complicated cases producing large recoveries, is it just to make a fee depend

11  solely on the reasonable amount of time expended," *quoting In re Sumitomo Copper*

12  *Litig.,* 74 F.Supp.2d 393, 396-398 (S.D.N.Y.1999).

13         **6.        Attorney Fee Awards in Similar Cases**

14         The requested fee of 30% is comparable to the fee percentage awarded to

15  Class Counsel in other wage and hour class actions, including the following[8]:

16  •    *Ingalls v. Hallmark Mktg. Corp.,* 08cv4342 VBF (Ex), Doc. No. 77, ¶ 6

17        (C.D.Cal. Oct. 16, 2009) (awarding 33.33% fee on a $5.6 million wage and

18        hour class action[9]);

19  •    *Birch v. Office Depot, Inc.,* Case No. 06cv1690 DMS (WMC), Doc. No. 48, ¶

20        13 (S.D.Cal. Sept. 28, 2007) (awarding a 40% fee on a $16 million wage and

21        hour class action);

22

23

24  [8] Pursuant to FRE Rule 201(b) and (d), Plaintiffs request that this Court takes

25  Judicial notice of the these eight District Court cases.

26

27  [9] "The Attorneys' Fees requested by Class counsel, $1,825,000.00 of the total

28  settlement of $5,625,000 are reasonable and are within the range of fees awarded in
    comparable cases."

- *Rippee v. Boston Mkt. Corp.,* Case No. 05cv1359 BTM (JMA), Doc. No. 70, at 7-8 (S.D.Cal. Oct. 10, 2006) (awarding a 40% fee on a $3.75 million wage and hour class action).
- (33.3% fee on a $400,000  wage and hour class action) in *Benitez et al. v. Wilbur*, 1:08-CV-1122 LJO GSA (E.D. Cal., 2009)
- 33.3% fee on a $250,000 wage and hour class action) in *Chavez et al. v. Petrissans et al*, (1:08-CV- 00122 LJO-GSA) E.D. Cal. 2009,
- 30% in *Vasquez v. Aartman* (1:02-CV05624 AWI LJO) E.D. Cal.;
- 31.25% on $800,000 wage and hour class action in *Baganha v. California Milk Trans.* (E.D. Cal., 1:01-CV-05729 AWI LJO)
- 33% on $1,000,000 wage and hour class action in *Randall Willis et al. v. Cal Western Transport,* and *Earl Baron et al. v. Cal Western Transport,*Coordinated Case No. 1:00-cv-05695 AWI LJO) E.D. Cal. 2003

**D.    The Requested Service Awards Are Reasonable**

By asserting claims for failure to provide meal periods and seeking attorneys' fees per Cal. Labor Code §218.5, the Plaintiffs risked "two-way attorneys' fees," i.e., they risked having to pay the attorneys' fees of Dominos in the event that Dominos would have prevailed.  This factor, although not present in securities fraud and consumer class actions which often provide guidance regarding class action guidelines, nevertheless is a large risk which both class representatives assumed in order to obtain class-wide relief for their colleagues.

Further, unlike securities fraud consumer class actions where the class representatives may have limited interaction with other class members (or for that matter, unlike employment class actions where an employer has many locations), Plaintiffs Espinoza (who worked for Dominos for approximately eleven years) and Pedroza (who worked for Dominos for over one-year), both had frequent and significant communications with class members over the last three-years regarding this case (Malk Decl. ¶ 19).

Plaintiffs Espinoza and Pedroza each had their full deposition taken, each attended both full-day mediations in this case, and assisted in responding to written discovery (Malk Decl. ¶¶ 2, 19).  Both Plaintiffs provided extremely valuable assistance to Class Counsel while preparing for: the Rule 30(b)(6) depositions, the depositions of class members,  the class certification motion and reply, the mediation briefs, and provided a wealth of information which Class Counsel used as a basis for interviews with class members, which culminated in Class Counsel obtaining evidence regarding missed meal breaks from over 20% of the class. Before taking and/or defending the depositions of various defense witnesses who executed declarations favorable to Defendant, both Messers. Espinoza and Pedroza provided valuable information to Class Counsel which enabled Class Counsel to impeach three of Defendant's own declarants during deposition, and to repudiate their declarations[10].

The requested enhancement fee of $10,000 each to Plaintiffs Espinoza and Pedroza is 0.6% each of the settlement, and the combined $20,000 for both class representatives is 1.3% of the total settlement amount[11], [12].

---

[10] See Certification Order, Dkt. No 54, page 33, lines four through 15; Malk Decl. ¶ 19.

[11] See *West v. Circle K Stores, Inc.*, Dist. Court, (Case No. Civ. S-04-0438 WBS GGH) ED California 2006 ("The proposed payment is not particularly unfair to other class members, given that it will not significantly reduce the amount of settlement funds available to the rest of the class").

[12] The requested amount of the enhancement awards is within the range or enhancement awards in other wage and hour class actions.  See *Ingalls v. Hallmark Mktg. Corp.,* 08cv4342 VBF (Ex), (C.D.Cal. Oct. 16, 2009) (awarding $10,000 to each of the six class representatives in a $5.6 million wage and hour class action settlement); *Benitez et al. v. Wilbur*, 1:08-CV-1122 LJO GSA (E.D. Cal., 2009) ($5,000 to both class representatives in a $400,000  wage and hour class action settlement); *Chavez et al. v. Petrissans et al*, 1:08-CV- 00122 LJO-GSA (E.D. Cal. 2009)($5,000 to each of four class representatives on a $250,000 wage and hour class action settlement), *Randall Willis et al. v. Cal Western Transport* Case No.

## V.  THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE.

The following schedule sets forth a proposed sequence for the relevant dates and deadlines, assuming this Court grants preliminary approval of the proposed Settlement on January 31, 2011.  The proposed schedule provides a 60-day claim filing period.  (Malk Decl. ¶ 8).  This schedule is also outlined in the proposed Order filed herewith.

| SCHEDULED ACTIONS | DATES |
|---|---|
| First mailing of Notice of Class Settlement, Claim and Release Form, and Opt-Out Form to the Class | [No later than 15 days after Preliminary Approval] |
| Follow-up mailing to Class (when defective Claim Form/Consent to  Join Form submitted) | As needed |
| Deadline to postmark Claim Form or Opt-Out Form | 60 Days After Notice Mailing |
| Deadline to serve Objections | No Later Than Fourteen Days Prior To The Final Fairness And Approval Hearing. |
| Deadline for filing Notice of Appearance to Object and Objections to Settlement | 30 days after Notice mailing |
| Final Approval Hearing | 21 days after Final Approval papers are filed |

1:00-cv-05695 AWI LJO (E.D. Cal. 2003)($34,000 to one class representative and $30,000 to another class representative in a $1,000,000 wage and hour class action settlement).

| Deposits and payments to claims administrator of GSF | Within ten business days of the effective date of settlement. |
|---|---|
| claims administrator  shall send postcard to class members who had undeliverabe addresses | Thirty Days Preceding The Last Day To Submit Timely Claim Forms. |
| Payment of Settlement Awards by CA | Within twenty-five (25) days of the Effective Date |
| Payment of Attorney's Fees and Expenses to Class Counsel | Within twenty-five (25) days of the Effective Date |

Plaintiff's Counsel proposes May 16, 2011 as the date for the hearing on Final Approval.

## VI.  APPROVAL OF CLASS NOTICE AND RELATED FORMS

**A.     The Proposed Procedure Provides Due Process Safeguards**

If the Court grants preliminary approval of the Settlement, all members of the Class will receive a Notice of Class Action Settlement (Malk Decl., Exhibit 2) and Election to be Excluded Form (Malk Decl., Exhibit 4), and former employees will receive a required Claim Form (Malk Decl., Exhibit 3).  The parties have agreed that Simpluris, Inc. shall serve as the Settlement Administrator, which will be provided with last known name and address information of class members.  Notices will be sent by first class mail.  For each Class Member whose Notice is returned, there will be one search, via an approved method.  Those Class Members who timely submit a complete Opt-Out form will not be included in the Settlement.

The Notice informs Class members how to exercise their rights and make informed decisions regarding the proposed Settlement, as well as explains Plaintiff's Counsel application for reimbursement of costs and attorneys' fees from the Settlement Fund.  The Notice clearly and adequately describes the terms of the Settlement Agreement and informs Class Members how individual recoveries will be determined.  Courts have approved far less comprehensive class notices.  *See*,

1  *e.g., In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993)

2  (Class Notice "need only describe the terms of the settlement generally.").

3  **B.      The Proposed Notice Plan and Claims Process are Appropriate**

4          Class members will have 60 days from the date of Notice mailing to submit

5  Opt-Out Forms or to object to the settlement, and Class members who are former

6  employees will have 60 days to submit Claim Forms.  (Malk Decl., Exhibit 1, Sec.

7  V.D.1.).  This is a sufficient amount of time to respond.  *See Torrisi v. Tucson Elec.*

8  *Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  This notice plan satisfies due process

9  and Rule 23(c)(2)(B).

10

11                              **VII.  CONCLUSION**

12          The proposed settlement is a fair and reasonable compromise of the issues in

13  dispute.  Plaintiffs thus respectfully request the Court to: (1) preliminarily approve

14  the Agreement; (2) approve the proposed Class Notice and related forms; (3)

15  approve the proposed Final Approval schedule and schedule a date for a hearing on

16  Final Approval; and (4) enter a Preliminary Approval Order.

17

18  DATED: December 28, 2010          Respectfully submitted,

19                                   **MICHAEL MALK, ESQ., A.P.C.**
                                     MICHAEL MALK
20

21                                   **WASSERMAN, COMDEN,**
                                     **CASSELMAN & ESENSTEN, L.L.P.**
22                                   MELISSA M. HARNETT
                                     JESSE B. LEVIN
23

24

25                                   By: _Michael Malk_____
26                                        MICHAEL MALK
                                     Attorneys for Plaintiffs Perfecto Espinoza and
27                                   Cesar Pedroza, and all others similarly situated

28