1

2

3

4

5

6

7

8

9   (Attorney Information Listed on Next Page)

10

11

12   UNITED STATES DISTRICT COURT

13   CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

14

| | |
|---|---|
| PERFECTO ESPINOZA and CESAR PEDROZA, individually and on behalf of all others similarly situated, | CASE NO. EDCV 07-1601-VAP (OPx) |
| Plaintiff, | |
| vs. | SETTLEMENT AGREEMENT BETWEEN PERFECTO ESPINOZA, CESAR PEDROZA, INDIVIDUALLY AND ON BEHALF OF THE CLASS, AND DOMINO'S PIZZA LLC |
| DOMINO'S PIZZA LLC, a Michigan Limited Liability Company, DOMINO's PIZZA DISTRIBUTION LLC, a Delaware Limited Liability Company; and DOES 1-100, inclusive, | |
| Defendant. | Honorable Virginia A. Phillips |

26

27

28

12109532. 1

Exhibit 1

1   MELISSA M. HARNETT (Bar No. 164309)
    mharnett@wccelaw.com
2   JESSE B. LEVIN (Bar No. 268047)
3   jlevin@wccelaw.com
    WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
4   5567 Reseda Boulevard, Suite 330
5   Post Office Box 7033
    Tarzana, California 91357-7033
6   Telephone:    (818) 705-6800
7   Facsimile:    (818) 345-0162

8   BARRY GOLDSTEIN (Bar No. 141868)
9   goldstein.barry22@gmail.com
    300 Lakeside Drive, Suite 1000
10  Oakland, CA  94612
11  Telephone:  (510) 287-4300
    Facsimile:   (510) 835-1417
12
13  MICHAEL MALK (Bar No. 222366)
     mm@malklawfirm.com
14  MALK LAW FIRM
15  1180 South Beverly Drive, Suite 600
    Los Angeles, CA  90035
16  Telephone:  (310) 203-0016
    Facsimile:   (310) 499-5210
17
18  Attorneys for Plaintiffs PERFECTO ESPINOZA, CESAR PEDROZA, and all
19  others similarly situated

20

21

22

23

24

25

26

27

28

    12109532. 1

Exhibit 1

1  Frank Cronin (Bar No. 69840)
   fcronin@swlaw.com
2  Brian Mills (Bar No. 216078)
   bmills@swlaw.com
3  SNELL & WILMER L.L.P.
4  600 Anton Boulevard, Suite 1400
5  Costa Mesa, CA 92626-7689
   Telephone:  (714) 427-7000
6  Facsimile:  (714) 427-7799
7  Attorneys for Defendant Domino's Pizza LLC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 1

1      This Settlement Agreement ("Agreement") is entered between Plaintiffs

2   Perfecto Espinoza and Cesar Pedroza ("Named Plaintiffs"), as class representatives

3   on behalf of themselves and all class members of the classes they represent (the

4   "Class," the "Settlement Class," or the "Class Members"), on the one hand, and

5   Defendant Domino's Pizza LLC (including former Defendant Domino's Pizza

6   Distribution LLC, collectively, "Domino's" or "Defendant"), on the other hand,

7   with respect to the litigation entitled *Perfecto Espinoza and Cesar Pedroza v.*

8   *Domino's Pizza LLC and Domino's Pizza Distribution LLC*, United States District

9   Court for the Central District of California ("Court") Case No. EDCV 07-1601-

10   VAP (OPx), (the "Lawsuit") (including the claim previously filed in state court that

11   Defendant subsequently removed).  This Agreement shall become effective upon

12   the "Effective Date of Settlement" as defined below.

13      Defendant and the Named Plaintiffs (collectively the "Parties") do hereby

14   agree to do all things and procedures necessary and appropriate to obtain such final

15   approval of this Agreement in consideration for:  (a) payment by Defendant of the

16   consideration expressed herein subject to the terms, conditions, and limitations of

17   this Agreement; (b) the release and dismissal with prejudice as described more fully

18   below; and (c) other valuable consideration set forth herein.

19   **I.      INTRODUCTION AND NATURE OF ACTION**

20      1.      The Named Plaintiffs filed suit on October 30, 2007, in San

21   Bernardino County Superior Court alleging, inter alia:  (1) failure to provide off-

22   duty meal breaks during employment (Lab. Code §§ 226.7, 512 and Industrial

23   Welfare Commission ("IWC") Wage Order No. 9); (2) failure to issue accurate,

24   itemized wage statements (Lab. Code §§ 226 & 226.3); (3) failure to pay wages at

25   the time of termination (Lab. Code §§ 201-203); and (4) unfair business practices

26   (Bus. & Prof. Code § 17200 *et seq.*) ("Complaint").

27      2.      Defendant filed an Answer denying any liability or wrongdoing of any

28   kind associated with the claims alleged in the Complaint and removed the case on

12109532. 1

Exhibit 1

December 5, 2007.  Defendant contends that it has complied at all times with the applicable state law in all respects and expressly denies any wrongdoing or legal liability and continues to assert defenses thereto.

3.      On October 20, 2008, the Named Plaintiffs, with Defendant's consent given with a full reservation of rights, filed a proposed First Amended Complaint adding a cause of action for alleged unpaid wages relating to nondriving work performed by drivers before and after each shift, from the period of June 25, 2004, onwards and amending the scope of the class period for their meal break violation claims so that the date of the class period for those claims continued to the present. The First Amended Complaint was accepted for filing on December 5, 2008.

4.      On October 20, 2008, the Named Plaintiffs filed a motion for certification, and following multiple rounds of briefing, the Court certified the Class pursuant to Fed. R. Civ. Proc. 23 on February 18, 2009, with four sub-classes as defined below.

5.      Defendant subsequently petitioned the United States Court of Appeals for the Ninth Circuit for permission to appeal the Court's grant of the Named Plaintiffs' certification motion under Fed. R. Civ. P. 23(f), which the Ninth Circuit denied on May 28, 2009.

6.      All Parties and their counsel believe that this Agreement is fair, reasonable, and in the best interests of the Class.

## II.   REPRESENTATIONS

1.      For settlement and without limiting the releases contained herein, the Parties agree that the "Class," which comprises four sub-classes, remains defined as it was certified in the Court's February 18, 2009 Order, with the sole change of limiting the class period to conclude on the date of preliminary approval of this Agreement:

a)   All current and former non-exempt employees of Domino's who were based out of the Southern California Distribution Center in Ontario,

12109532. 1

Exhibit 1

1    California, or the Northern California Distribution Center in Hayward,

2    California, and whose job responsibilities at any time during the period

3    from October 29, 2003, through the date of Preliminary Approval

4    (hereinafter "Covered Period") included driving trucks and/or acting as an

5    assistant driver or a driver helper (hereinafter "Route Pro") on the trucks

6    which delivered supplies from a distribution center to various

7    establishments in California (the "Meal Break Class");

8

9    b)  All current and former employees of Domino's, paid on a piece-rate

10   basis, who were based out of the Southern California Distribution Center

11   in Ontario, California, or the Northern California Distribution Center in

12   Hayward, California, and who performed at least one inspection of a truck

13   before or after driving a route between June 25, 2004, through June 1,

14   2006 (the "Inspection Work Class");

15

16   c)  The "California Labor Code Section 203 Class," coextensive with the

17   Meal Break Class; and

18

19   d)  The "California Labor Code Section 226 Class," coextensive with the

20   Meal Break Class.

21

22   2.    Counsel for the Class are:  Michael Malk of MICHAEL MALK, ESQ.

23   APC, 1180 South Beverly Drive, Suite 610, Los Angeles, CA 90035; Barry

24   Goldstein, Esq., Of Counsel to GOLDSTEIN, DEMCHEK, BALLER, BORGEN,

25   AND DARDARIAN, 300 Lakeside Drive, Suite 1000, Oakland, CA  94612; and

26   Melissa M. Harnett and Jesse B. Levin of WASSERMAN, COMDEN,

27   CASSELMAN & ESENSTEN, L.L.P., 5567 Reseda Boulevard, Suite 330, Post

28   Office Box 7033, Tarzana, CA 91357-7033 (referred to herein as "Class Counsel").

12109532. 1

Exhibit 1

3.     Counsel for Defendant are Frank Cronin and Brian Mills of SNELL & WILMER, L.L.P., 600 Anton Boulevard, Suite 1400, Costa Mesa, CA 92626-7689.

4.     The Named Plaintiffs on their own behalf and on behalf of the Class contend that Defendant violated California's wage and hour laws and that this case is appropriate for class certification as the requisites for class certification can be satisfied, at least with respect to the claims alleged in the Lawsuit for the alleged: (1) failure to provide timely off-duty meal breaks and failure to pay for missed, untimely, and/or on-duty meal breaks under California law, (2) failure to compensate employees for nondriving work time, (3) failure to provide accurate, itemized wage statements, (4) failure to pay all wages upon termination and waiting time penalties under California Labor Code Section 203, and (5) violations of California's Unfair Competition Law ("UCL").

5.     The Named Plaintiffs have alleged and continue to allege that the claims asserted in this Lawsuit have merit and give rise to liability on the part of Defendant.  Neither this Agreement, nor any statement herein, nor any document referred to or contemplated herein, nor any action taken to carry out this Agreement, is, may be construed as, or may be used as, an admission, concession, or indication by or against the Named Plaintiffs or Class Counsel as to the merits or lack thereof of the claims asserted and the propriety of class certification, except as expressly provided herein.

6.     Defendant maintains that it has complied with the applicable law in all respects and denies any liability or wrongdoing of any kind associated with the claims alleged in the Lawsuit (including in the proposed Second Amended Complaint) and repeatedly has asserted and continues to assert defenses thereto. Defendant has entered into this Agreement to avoid the cost and inconvenience of further litigation.  Neither this Agreement, nor any statement herein, nor any document referred to or contemplated herein, nor any action taken to carry out this Agreement, is, may be construed as, or may be used as, an admission, concession,

12109532. 1

Exhibit 1

or indication by or against Defendant of any fault, wrongdoing, or liability whatsoever.

7.    Pursuant to Federal Rule of Evidence 408, this Agreement shall be inadmissible in evidence in any proceeding, except as necessary to approve, interpret, or enforce this Agreement.

8.    Both sides are sufficiently familiar with the facts of this case to warrant settlement now.  During the several years of this litigation, both before and after class certification, the Parties have engaged in extensive formal and informal discovery of information and documents relating to the Lawsuit, including production of:  time records; wage, hour, and other policies and procedures; payroll data; Department of Transportation logs; and other data related to the Class, including shifts worked, average wages, and positions worked.  Further, the Parties have interviewed and deposed Defendant's current and former employees.

9.    The Parties also participated in two mediations of the Lawsuit before Michael E. Dickstein, an independent mediator with extensive experience in wage and hour class actions.  During these mediation sessions, the Parties exchanged additional information.  The Parties' second mediation on April 20, 2010, ultimately resulted in this Agreement.

10.    At all times, the Parties' negotiations were non-collusive and at arm's length.

11.    The Parties recognize that the issues presented in the Lawsuit are likely only to be resolved with extensive and costly pretrial proceedings and that further litigation will cause inconvenience, distraction, disruption, delay, and expense disproportionate to the potential benefits of litigation and have taken into account the risk and uncertainty of the outcome inherent in any litigation.

12.    Based on their own independent investigations and evaluations, the Parties and their respective counsel are of the opinion that the settlement for the consideration and on the terms set forth in this Agreement is fair, reasonable, and

Exhibit 1

adequate.  Class Counsel are of the opinion that the settlement, including the amount, is in the best interests of the Class, and that the settlement for each participating Class Member is fair, reasonable, and adequate, given the inherent risk of litigation.  Defendant's counsel believes that the settlement is in Defendant's best interest.  The Parties and their counsel have formed their opinions in light of all known facts and circumstances and the risks inherent in litigation, including the potential appellate issues.

13.   To the best knowledge of the Parties and their respective counsel indicated below, there are no other similar claims asserted or filed by members of the Class.

14.   The purpose of this Agreement is to settle and compromise all claims released by virtue of the releases in the Agreement by the Named Plaintiffs and the Class Members as specified herein.

15.   This Agreement is contingent upon the approval and certification by the Court of the Settlement Class for settlement purposes only.  This Agreement shall be deemed null and void and shall be of no force or effect whatsoever, and shall not be admitted, referred to, or utilized by any of the Parties for any purpose whatsoever in the event that:  (1) the Court does not approve this Agreement and does not execute an Order of Final Approval; (2) the Court does not finally approve the Agreement as proposed by the Parties and without any modification (unless the Parties agree to said modification in writing); (3) the Order of Final Approval as submitted by the Parties does not become final for any reason; or (4) the Final Approval, as defined herein, does not occur.

## III.   SETTLEMENT FUND AND RELATED TERMS

In consideration of the mutual covenants, promises, and representations set forth in this Agreement, the Named Plaintiffs, on behalf of themselves and the Class, and Defendant, agree to settle and compromise the Lawsuit, subject to the

12109532. 1

Exhibit 1

1   terms and conditions set forth in this Agreement and the approval of the United

2   States District Court of the Central District of California.

3       1.      As consideration for the settlement described herein and the releases

4   contained in this Agreement, Defendant agrees to pay up to, but not more than, One

5   Million, Four Hundred and Fifty Thousand Dollars and Zero Cents ($1,450,000.00)

6   ("Maximum Settlement," "Gross Settlement Fund," or "GSF"), on a non-

7   reversionary basis, to settle the Lawsuit, consistent with the releases provided

8   herein.  Defendant shall not pay any other amounts other than Defendant's share of

9   Payroll Taxes as expressly defined below.  Payments from the GSF shall be

10  distributed on the following basis:

11      a) Attorneys' Fees and Costs.  Subject to Court approval, Defendant will

12  pay up to a maximum of thirty percent (30%) out of the GSF or Four Hundred and

13  Thirty Five Thousand Dollars and Zero Cents ($435,000.00) to Class Counsel for

14  Plaintiffs' attorneys' fees and a maximum of Twenty Thousand Dollars and Zero

15  Cents ($20,000.00) in costs.  Defendant agrees not to oppose Class Counsel's

16  application to the Court for the payment of no more than Four Hundred and Thirty

17  Five Thousand Dollars and Zero Cents ($435,000.00) in fees and Twenty Thousand

18  Dollars and Zero Cents ($20,000.00) in costs out of the GSF.  Under no

19  circumstances shall Defendant be required to pay Class Counsel more than Four

20  Hundred and Thirty Five Thousand Dollars and Zero Cents ($435,000.00) in

21  attorneys' fees and Twenty Thousand Dollars and Zero Cents ($20,000.00) in

22  costs.  Class Counsel's fees and costs shall be deducted from the GSF.  To the

23  extent that the Court approves less than the amount of attorney's fees and costs than

24  Class Counsel requests, the difference between the requested and awarded amounts

25  will be distributed among the participating Class Members.

26      b) Named Plaintiffs' Enhancement Payments.  Application will be made

27  to the Court, subject to Court approval, of up to Ten Thousand Dollars and Zero

28  Cents ($10,000.00) to each of the Named Plaintiffs (an aggregate sum of Twenty

12109532. 1

Exhibit 1 -10-

1  Thousand Dollars and Zero Cents ($20,000.00) to both Named Plaintiffs) for

2  serving as representatives for the Settlement Class and for a general release of all

3  claims against Defendant (referred to hereafter as "Enhancements" or

4  "Enhancement Payments").  The Enhancements shall be deducted from the GSF.

5  To the extent that the Court approves less than the amount of the Named Plaintiffs'

6  awards that the Named Plaintiffs request, the difference between the requested and

7  awarded amounts will be proportionately redistributed among the participating

8  Class Members.

9        c) Private Attorney General Act Claims ("PAGA").

10              (1)  Subject to the conditions described herein, Defendant shall pay

11              the PAGA payment to the California Labor and Workforce

12              Development Agency ("LWDA") for alleged Labor Code violations in

13              the amount of Five Thousand Dollars and Zero Cents ($5,000.00).

14              Said PAGA payment shall be paid out from the GSF, and shall be

15              distributed one hundred percent (100%) to the LWDA.

16              (2)  Defendant shall make said PAGA payment provided that (a) the

17              Named Plaintiffs amend the Lawsuit to include a PAGA claim and (b)

18              the Named Plaintiffs timely exhaust their administrative remedies.  In

19              this regard, the Named Plaintiffs agree to and shall amend the Lawsuit

20              to include a claim under PAGA and to exhaust administrative remedies

21              with the LWDA.  Should the LWDA or the Court preclude the Named

22              Plaintiffs from amending the Lawsuit and adding a PAGA claim or

23              should Defendant otherwise be unable to perfect the release of any

24              PAGA claim against the Released Parties by the Named Plaintiffs and

25              the Settlement Class, then Defendant shall have the right,

26              notwithstanding any other provisions of this Agreement and after

27              meeting and conferring with Class Counsel, to withdraw from this

28

12109532. 1

Exhibit 1 -11-

1    Agreement, whereupon said Agreement will be null and void for all

2    purposes and may not be used or introduced in further litigation.

3    d) Administrative Costs.  The costs, fees, charges, and expenses of the

4    claims administration (referred to hereafter as the "Claims Administrator Costs"),

5    will be paid out of the GSF.  The Parties estimate the Claims Administrator Costs

6    should not exceed Fifteen Thousand Dollars and Zero Cents ($15,000.00).  The

7    Parties agree that Simpluris, Inc. ("Simpluris") will serve as Claims Administrator

8    (also "CA"), but retain the right mutually to select an alternative Claims

9    Administrator as circumstances dictate.  The duties of the Claims Administrator are

10   more particularly defined below.  Ten (10) business days after filing of an order

11   granting preliminary approval, Defendant will forward the quoted amount from

12   Simpluris or other mutually selected Claims Administrator not to exceed Fifteen

13   Thousand Dollars and Zero Cents ($15,000.00) from the GSF.  To the extent that

14   Claims Administrator Costs are less than quoted or allocated, the difference

15   between the requested and awarded amounts will be proportionately redistributed

16   among the participating Class Members.

17   e) Payments to Qualified Claimants.  Qualified Claimants (as defined

18   below) will be paid from the Gross Settlement Fund after deducting Class

19   Counsel's fees (no more than $435,000) and costs (no more than $20,000), the

20   Claims Administrator Costs ($15,000), the PAGA payment ($5,000), and the

21   Enhancements ($20,000)  (for a total of $495,000 in deductions) ("Net Settlement

22   Fund" or "NSF").  Under this formula it is estimated that approximately Nine

23   Hundred and Fifty Five Thousand Dollars and Zero Cents ($955,000.00) will be

24   allocated from the Net Settlement Fund among the Qualified Claimants.  The NSF

25   will be divided by the total number of weeks that every Class Member worked

26   during the Covered Period.  The resulting dollar amount will be the "base weekly

27   amount."  Each Qualified Claimant will receive payment in the form of a check in

28   the amount of this base weekly amount multiplied by the number of weeks the

Exhibit 1
-12-

Qualified Claimant worked during the Covered Period, subject to the terms set forth herein (including but not limited to the required withholdings).  For example if the total number of weeks worked by Qualified Claimants amounted to 25,000, and the NSF amounted to $955,000.00, then the base weekly amount would be $38.20 (or $9,550,000.00 / 25,000 weeks).  If a particular Qualified Claimant worked 200 weeks, then he or she will receive a check in the amount of $7,640.00 (or $38.20 x 200 weeks) (subject to the required withholdings and consistent with the terms herein).  Separate from and in addition to the GSF, Defendant will pay its share of the Payroll Taxes for the participating Qualified Claimants defined to mean those Payroll Taxes required by law, including Defendant's share of any social security taxes, Medicare taxes, federal and state unemployment taxes, and employer training taxes.

   f)  Fees and Costs (other than as provided above).  Defendant will bear its own attorneys' fees and costs.  Other than as expressly provided herein, the Named Plaintiffs and all Class Members will bear their own attorneys' fees and costs.

   2. Undeliverable Settlement Fund Amounts.  All amounts remaining in the Settlement Fund which are undeliverable (as defined below in section V.E.3) shall be paid to St. Jude's Children's Research Hospital, or, in the event that the Court does not approve of distribution of said amounts to St. Jude's Children's Research Hospital, then to another non-profit organization mutually agreed upon by the Parties and approved by the Court.  If any check remains uncashed (whether because it could not be delivered or otherwise) ninety (90) days after distribution of any such check, then the amount of said uncashed check shall be paid to St. Jude's Children's Research Hospital, or, in the event that the Court does not approve of distribution of said amounts to St. Jude's Children's Research Hospital, then to another non-profit organization mutually agreed upon by the Parties and approved by the Court.  In the event that the Court does not approve of distribution of claimed but uncashed checks to a non-profit organization, then Simpluris will pay

12109532. 1

Exhibit 1
-13-

the amount of the uncashed checks to the Unclaimed Property Division of the California Controller's Office.

3.      Redistribution of Certain Settlement Funds.  If a Claim Form is successfully delivered but not returned, the amount to which such Claimant would have been entitled shall revert to the GSF and shall be distributed among Qualified Claimants in accordance with the formula set forth in paragraph III.1.e above.

4.      Tax Treatment of Settlement Amounts

a)  With regards to settlement payments to Qualified Claimants (as defined below) who make timely and valid claims, Form 1099s and W-2s may be issued.  The Parties agree that it is currently unknown how the Internal Revenue Service will classify the amounts to be paid hereunder.  Nothing in this Agreement is intended to be construed as an admission or concession by any of the Parties or their respective counsel as to whether the amounts paid under California Labor Code Section 226.7 or any other provision are a penalty or a wage for tax purposes.  Nothing in this Agreement is intended to constitute legal advice and is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding penalties under the Internal Revenue Code.  Defendant is not responsible for any tax consequences regarding the allocation of the settlement payments.   Defendant or its agent(s) will prepare all tax-related documents based on the information reflected in its most recent W-4s that currently are in its possession.

b)  The Parties agree that each payment to the Named Plaintiffs and Qualified Claimants (as defined below) will be allocated in the following manner: (i) One third (1/3) of the above-referenced amount will be allocated to wages; (ii) one third (1/3) of the above-referenced amount will be allocated to penalties; and (iii) one third (1/3) of the above-referenced amount will be allocated to interest.

c)  Upon approval by the Court for whatever sum the Court deems fair and reasonable, the Enhancement Payments will result in the issuance of a Form 1099-MISC for the full amount of the Enhancement Payments.  The Named

12109532. 1

Exhibit 1 -14-

Plaintiffs shall assume full responsibility and liability for the payment of taxes due on such payments.

d)  Upon approval by the Court for whatever sum the Court deems fair and reasonable (but in no event to exceed 30% of the GSF as to fees and $20,000 as to costs), the payment of Class Counsel's fees and costs will result in the issuance of a Form 1099-MISC at the appropriate time to Class Counsel who shall assume full responsibility and liability for the payment of taxes due on such payments.

e)  Payment to Qualified Claimants (as defined below) from the NSF will result in the issuance of a W-2 for one third (1/3) of the payments made hereunder that are deemed the "Wage Component."  Those employer and employee payroll deductions that are required by law will be made for state and federal withholding taxes and any other applicable payroll deductions owed by Qualified Claimants as a result of the Wage Component.  No withholding shall be made on the interest and penalty portion of the Payment.  The Claims Administrator will issue an IRS Form 1099 for the remaining one-third (1/3) interest and one-third (1/3) penalty component.  Defendant shall pay its share of Payroll Taxes, as defined above.  Such payment is in addition to the amount paid by Defendant to the GSF.

5.  Limitation on Defendant's Liability

a)  Except as expressly specified herein (respecting Payroll Taxes), in no event shall Defendant be liable for or pay amounts in excess of the GSF, whether to the Named Plaintiffs, the Class Members, Class Counsel, or the LWDA, or otherwise.

6.  The Parties and their respective counsel agree to cooperate and take all steps necessary and appropriate to dismiss with prejudice the Lawsuit and all derivative lawsuits after submission to the Court of proof of payment of all timely claims made by Class Members.

**IV.  RELEASES**

**A.  Releases By the Named Plaintiffs**

12109532. 1

Exhibit 1 -15-

1.      In consideration of the mutual covenants, promises, and representations set forth in this Agreement, and except for the rights, duties, and obligations created by this Agreement, the Named Plaintiffs on their own behalf and on behalf of their current, former, and future heirs, spouses, children, offspring, executors, trustees, administrators, attorneys, agents, personal and legal representatives, successors, and assigns, do hereby and forever release, waive, acquit, and discharge Defendant, and each of its past, present, or future officers, directors, divisions, owners, shareholders, employees, partners, privies, agents, principals, heirs, personal and legal representatives, assigns, subrogees, executors, trustees, administrators, fiduciaries, accountants, auditors, attorneys, consultants, insurers, and reinsurers, and their respective successors and predecessors in interest, subsidiaries, affiliates, parents, and each of their company-sponsored employee benefit plans, and all of their respective officers, directors, employees, administrators, fiduciaries, trustees, and agents, and anyone acting on Defendant's behalf (referred to as "Released Parties"), from any and all Released Claims (defined below) for or by reason of any cause, matter or thing whatsoever, from the beginning of the world to the Effective Date of Settlement.

2.      "Released Claims" means any and all claims, rights, actions, causes of action, suits, arbitrations, liens, demands, controversies, grievances, allegations, accusations, judgments, and liabilities of any kind whatsoever, as well as all forms of relief, including all remedies, costs, losses, liabilities, damages (whenever incurred and of any kind whatsoever, including compensatory, statutory, liquidated, exemplary, or punitive damages), wages, benefits, debts, expenses, penalties, interest, and attorneys' and other professionals' fees and disbursements, and any other form of relief or remedy in law, equity, or whatever kind or nature, whether known or unknown, suspected or unsuspected, anticipated or unanticipated, and asserted or unasserted, that they or either of them ever had, presently has, or may presently have against the Released Parties, including but not limited to those

12109532. 1

Exhibit 1 -16-

1   arising from or relating directly or indirectly to (a) the Lawsuit and any facts

2   alleged in the Lawsuit, whether in complaints, amended complaints, proposed

3   amended complaints, motions, memoranda of law, or briefs; (b) alleged violations

4   of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; violations of California

5   Labor Code §§ 90.5, 201, 202, 203, 204, 218, 218.5, 218.6, 226, 226.3, 226.7, 512,

6   558, 1174, 1194, 1194.2, 1197, 1198; the Industrial Welfare Commission Orders;

7   PAGA, Cal. Labor Code § 2699 *et seq.*; the UCL, Cal. Bus. & Prof. Code § 17200

8   *et seq.*; any other federal, state, or municipal statute, law, ordinance, rule, or

9   regulation, whether (i) claiming compensation, money damages, restitution,

10  statutory damages, civil penalties, exemplary or punitive damages, equitable

11  remedies, or other type of relief; (ii) based on common law or public policy; or (iii)

12  sounding in tort or contract, whether written or oral, express or implied, in law or in

13  equity, and statutory or common law; (c) employment with Defendant and the

14  termination of said employment; (d) any claim for wages, overtime pay, retaliation,

15  unused vacation, unpaid work expenses, unlawful deductions, wrongful termination

16  of employment, harassment, discrimination, violation of public policy, breach of

17  contract, breach of implied covenants, defamation, fraud, infliction of emotional

18  distress; and (e) any act, omission, or occurrence taking place on or before the

19  Effective Date of Settlement.

20      3.      The Named Plaintiffs agree that each will not knowingly in the future

21  seek employment with Defendant or any entity currently owned by or affiliated

22  with Defendant and, as a result of and based on this Agreement, Defendant is

23  entitled to reject, with or without cause, any application for employment made by

24  Plaintiffs.

25      4.      No person shall have any claim against Defendant, Defendant's

26  Counsel, the Released Parties, the Named Plaintiffs, any Class Member, or Class

27  Counsel based on allocations, distributions, and payments that have been made in

28  accordance with this Agreement.

12109532. 1

Exhibit 1
-17-

5.      The Named Plaintiffs acknowledge that they are releasing both known and unknown and suspected and unsuspected claims and causes of action and are aware that they may hereafter discover legal or equitable claims or remedies presently unknown or unsuspected or facts in addition to or different from those which they now know or believe to be true with respect to the allegations and subject matters in the Complaint, the First Amended Complaint, the proposed Second Amended Complaint, and other filings in the Lawsuit during the class period or with respect to the Released Claims.  Nevertheless, it is the intention of the Named Plaintiffs to fully, finally, and forever settle and release all such matters, and all such claims and causes of action arising from or relating thereto, which exist, hereafter may be determined to exist, or might have existed (whether or not previously or currently asserted in the Lawsuit).

6.      The Named Plaintiffs further agree that no third party, including but not limited to any private attorney general, including but not limited to under PAGA, or any UCL plaintiff, shall bring any claim released herein on their behalf.

7.      The Named Plaintiffs further covenant and agree that (a) neither of the Named Plaintiffs will sue or bring any action or cause of action, including by way of third-party claim, cross-claim, or counterclaim, against any of the Released Parties in respect of any of the Released Claims; (b) neither of the Named Plaintiffs will initiate or participate in bringing or pursuing any class action against any of the Released Parties in respect of any of the Released Claims; (c) if involuntarily included in any such class action, each of the Named Plaintiffs will use their best efforts to withdraw therefrom; and (d) neither of the Named Plaintiffs will assist any third party in initiating or pursuing a class action suit in respect of any of the Released Claims.  Nothing herein shall preclude the Named Plaintiffs from complying with a lawful order by a court with jurisdiction or responding to a duly issued subpoena.

**B.      Release By Class Members**

12109532. 1

Exhibit 1
-18-

1.      In consideration of the mutual covenants, promises, and representations set forth in this Agreement, and except for the rights, duties and obligations created by this Agreement, each Class Member (other than those Class Members who timely and properly opt out of the Agreement) on their own behalf and on behalf of their current, former, and future heirs, spouses, children, offspring, executors, trustees, administrators, attorneys, agents, personal and legal representatives, successors, and assigns, do hereby and forever release, waive, acquit, and discharge Defendant and the Released Parties from any and all Covered Claims (defined below) for or by reason of any cause, matter or thing whatsoever, from the beginning of the world to the Effective Date of Settlement.

2.      "Covered Claims" means any and all claims, causes of action, damages, wages, benefits, expenses, penalties, debts, liabilities, demands, obligations, attorneys' fees, costs, and any other form of relief or remedy in law, equity, or whatever kind of nature, whether known or unknown, suspected or unsuspected, arising from the claims pled in this Lawsuit and any claims arising out of  or related to the Lawsuit and any claims based on facts alleged in the operative complaint (including any complaint amended subsequent to execution of this Agreement), including, without limitation, all claims for failure to provide meal breaks, failure to pay for all hours worked, failure to issue accurate itemized wage statements, itemized wage statement penalties, and unfair business practices under the California Labor Code and California Business and Professions Code during the class period covered by the Lawsuit, asserted or that might have been asserted by any Class Member against the Released Parties through Preliminary Approval of the Settlement.

**C.      Waiver by the Named Plaintiffs and Every Settling Class Member**

1.      Each of the Named Plaintiffs with respect to the Released Claims, and each member of the Settlement Class with respect to the Covered Claims waives their rights under Section 1542 of the California Civil Code, which states:

12109532. 1

Exhibit 1 -19-

Section 1542. [General Release - Claims Extinguished.] A
general release does not extend to claims which the
creditor does not know or suspect to exist in his or her
favor at the time of executing the release, which if known
to him or her must have materially affected his or her
settlement with the debtor.

2.      Each of the Named Plaintiffs and each member of the Settlement Class
make this waiver with full knowledge of his rights and with the specific intent to
release all known and unknown claims arising on or before the Effective Date of
Settlement, and therefore specifically waives the provisions of any statute, rule,
decision or other source of law of the United States or of any state of the United
States or any subdivision of a state which prevents release of unknown claims.

## V.      NOTICE TO THE SETTLEMENT CLASS AND THE CLAIMS PROCESS

### A.      The Claims Administrator

1.      The Parties have agreed that Simpluris will perform the duties of the
Claims Administrator ("CA") for the purpose of administering claims made by
Class Members in accordance with this Agreement.

2.      Subject to the CA's agreement, which Defendant will make reasonable
efforts to secure, the CA shall make the completed Claim Forms and Opt Out
Forms available for inspection to counsel for the respective Parties prior to final
approval of this Agreement and the dismissal of the Lawsuit.  Any and all disputes
regarding the CA's performance of its duties shall be referred to the Court, if
necessary, which will have continuing jurisdiction over the terms and conditions of
this Agreement until all payments and obligations contemplated by this Agreement
have been fully carried out.

12109532. 1

Exhibit 1 -20-

3.     The Parties have the right to monitor and review administration of the Agreement to verify that the monies allocated to the Class are distributed in a correct amount and only to Qualified Claimants as defined herein.

**B.     The Claim Form**

1.     Members of the Class who are not employed by Defendant as of the date of Preliminary Approval (hereinafter "Former Employees") and who wish to submit a claim shall complete and submit a timely "Claim Form."  The Claim Form will be sent and attached with the Notice as set forth below.  Members of the Plaintiff Class who are employed by Defendant as of the date of Preliminary Approval (hereinafter "Current Employees") will not be required to submit a Claim Form.  Former Employees will be sent a Claim Form, attached hereto as Exhibit "A"  The Claim Form will require the Former Employee to provide the following information under penalty of perjury:  (1) the name, address, and telephone number of the person making the claim; (2) that he or she has not settled, released, or received judgment or awards as to the claims at issue in this Lawsuit; and (3) that he or she involuntarily missed meal breaks during the class period.

**C.     The Notice and Opt Out Forms**

1.     Defendant shall request the CA to send a notice to each Class Member in the form agreed to by Class Counsel and Defendant's counsel and approved by the Court which contains an anticipated calculation of the Class Member's share of the NSF (subject to the withholdings provided herein) and the estimated amounts of attorney's fees and costs (in no event greater than 30% of the GSF ($435,000) as to fees and $20,000 as to costs), the Named Plaintiffs' Enhancements, and administration fees to be paid ("Notice").  Notice will be sent as set forth below in section V.E.

2.     For all Class Members, including Current and Former Employees, an "Opt Out Form," agreed to by Class Counsel and Defendant's Counsel and approved by the Court, will be attached to the Notice  in which the Class Member

12109532. 1

Exhibit 1  -21-

requests exclusion ("Opt Out Form").  For Former Employees, the Claim Form, agreed to by Class Counsel and Defendant's Counsel and approved by the Court, will be attached to the Notice.  Each Notice will contain pre-printed information from Defendant's business records as to the date(s) that the Class Member worked within the Covered Period and include each Class Members' respective estimated individual settlement payment amount and the contact information for the Class Counsel and CA.  The Notice, Opt Out Form, and Claim Form will direct the Class Members to return any Opt Out Form or Claim Form directly to the CA.

**D.    Completion of the Claims Process by Class Members**

1.    Subject to Court approval, Class Members shall have sixty (60) days from the date of the postmark of the initial mailing (referred to hereafter as the "Claims Period") properly to complete the Claim Form (Former Employees only) or the Opt Out Form (including setting forth the Settlement Class member's full name, date(s) of employment, and present address), sign it, and to postmark it for return mail to the CA (return via facsimile and/electronic mail are also acceptable). Claim Forms or Opt Out Forms postmarked after the close of the Claims Period will not be honored; however, additional time may be provided to a Class Member upon a showing of good cause as determined by the Parties and, if there is a dispute between the Parties, the Court.  A Class Member need not use the Claim Form in order to make a claim; however, if the Claim Form is not used, then the Class Member must make a claim in a written statement which provides the following information under penalty of perjury: (1) the name, address, and telephone number of the person making the claim; (2) that he or she has not settled, released, or received judgment or awards as to the claims at issue in this Lawsuit; and (3) that he or she involuntarily missed meal breaks during the class period.  The written statement must be returned by mail to the CA at the specified address and must be postmarked on or before the last day of the Claims Period.

12109532. 1

Exhibit 1 -22-

2.    If any Former Employee refuses to aver, under penalty of perjury (whether on the Claim Form or in a written statement), that he or she involuntarily missed meal breaks during the class period, he or she will be ineligible for any recovery.

3.    A Class Member need not use the Opt Out Form in order to exercise the Class Member's right to opt out of the settlement; however, if the Opt Out Form is not used, then the Class Member must request exclusion in a written statement which:  (1) must contain the name, address, and telephone number of the person requesting exclusion; (2) must be returned by mail to the CA at the specified address; (3) must be postmarked on or before the last day of the Claims Period; and (4) must specify the Class Member's election to be excluded from the Settlement Class.

**E.    Transmission of Documents to Class Members**

1.    Notice will be sent to each Class Member by First Class US mail to his or her last known address with directions to the Postmaster to forward the Notice and return all undeliverable Notices to the CA.  The CA shall mail the foregoing Notice to each Class Member within fifteen (15) days of the latter of filing of an order preliminarily approving this Agreement or of filing of a Court Order approving the Notice of the Agreement to the Settlement Class, unless the Court specifies another date.

2.    For each Class Member whose Notice is returned, there will be one search by the CA, via an approved method to be determined by the CA, with copies of the search results provided to Class Counsel and Defendant.  A supplemental Notice shall be mailed to each Class Member whose Notice is returned as undeliverable to the CA, and such Notice must be mailed within ten (10) days of receiving notice that the mail was undeliverable.

12109532. 1

Exhibit 1 -23-

3.     If any Class Member's supplemental Notice is returned as undeliverable, that Class Member's settlement fund amount will be deemed undeliverable and treated as described above in section III.2.

4.     Thirty (30) days preceding the last day to submit a timely Claim Form, the CA shall mail a reminder postcard, in a form approved by Class Counsel and Defense Counsel, to all Settlement Class Members who have not already sent in a Claim Form, opted-out, or had their settlement fund amounts deemed undeliverable, as described above in section V.E.3.  Where an individual Class Member's original or supplemental Notice was returned, the CA shall mail the postcard to whichever address was most recently discovered by the search described above.  If any Class Member's reminder postcard is returned as undeliverable, but the Notice or supplemental Notice was not returned as undeliverable, that Class Member's settlement fund amount to which such Claimant would have been entitled shall revert to the GSF and shall be distributed among Qualified Claimants in accordance with the formula set forth in paragraph III.1.e above.

5.     Without regard to whether the Notice, Supplemental Notice, or reminder postcard is returned as undeliverable, a Class Member who returns a properly completed Claim Form or written notice in lieu of a properly completed Claim Form before the end of the Claims Period as described above in section V.D. will be entitled to his or her settlement fund amount.

**F.     Defendant's Right to Terminate Agreement**

1.     If ten percent (10%) or more of the Class Members (excluding the Named Plaintiffs) exercise their right to be excluded from the class action settlement defined in this Agreement, Defendant shall have the right, notwithstanding any other provisions of this Agreement and after meeting and conferring with Class Counsel, to terminate this Agreement, whereupon said Agreement will be null and void for all purposes and may not be used or introduced

12109532. 1

Exhibit 1 -24-

1   in further litigation.  Under no circumstances will a Former Employee's failure to

2   submit a timely Claim Form be considered an "Opt Out" nor an exercise of that

3   Class Member's right of exclusion.  Subject to the CA's agreement, which

4   Defendant will make reasonable efforts to secure, the CA shall notify Class Counsel

5   and Defendant of the number of timely requests for exclusion as soon as practicable

6   following the close of the Opt Out Period.  If Defendant elects to exercise its rights

7   under this provision, it must notify Class Counsel and the Court in writing no later

8   than ten (10) days after the CA has notified Class Counsel and Defendant of the

9   total number of timely requests for exclusion from the Agreement.  No settlement

10  payments shall be made to any Class Member until expiration of the time period for

11  Defendant to exercise its rights under this paragraph.

12      **G.    Other Obligations**

13          1.    Defendant shall provide to the CA, with copies to Class Counsel, data

14  necessary to effectuate the Agreement including, but not limited to, the names, last

15  known addresses, last known phone numbers and dates of employment of all Class

16  Members.  Any requests by the CA for documents or information from Defendant

17  must be responded to within a reasonable amount of time to be agreed upon by

18  Class Counsel and counsel for Defendant.  Class Counsel shall be provided with

19  copies of any information provided by Defendant to CA or correspondence

20  exchanged between Defendant and CA, provided Class Counsel takes proper steps

21  to maintain the confidentiality of the information and does not release or use the

22  information other than for purposes of effecting the settlement of this Lawsuit.

23          2.    Defendant shall make reasonable efforts to secure agreement from the

24  CA that the CA (along with any of its agents) shall represent and warrant that it

25  will:  (1) provide reasonable and appropriate administrative, physical, and technical

26  safeguards for any personally identifiable information ("PII"), which it receives

27  from Defendant; (2) not disclose the PII to third parties, including agents or

28  subcontractors, without Defendant's Counsel's and Class Counsel's consent; (3) not

12109532. 1

Exhibit 1 -25-

1   disclose or otherwise use the PII other than to carry out its duties as set forth herein;

2   (4) promptly provide Defendant's Counsel and Class Counsel with notice if PII is

3   subject to unauthorized access, use, disclosure, modification, or destruction; and (5)

4   return or destroy the PII upon termination of its services.

5          **H.    Objections to Agreement**

6          1.    Class Members shall be given the opportunity to object to the terms of

7   the Agreement, including the proposed award of fees and costs to Class Counsel,

8   and to participate at the final fairness and approval hearing, in accordance with the

9   instructions set forth in the Notice.  Any Class Member seeking to object to the

10  fairness and approval of the Agreement by the Court (not including their calculated

11  recovery under the Agreement) shall file such objection in writing with the Court,

12  and serve such objection on Class Counsel and Defendant's counsel no later than

13  the date set by the Court for an objection deadline, and in no event later than

14  fourteen (14) days prior to the final fairness and approval hearing.  The filing date

15  and postmark date of the mailing service copies shall be deemed the exclusive

16  means for determining that the objection is timely.  The objection must state the

17  factual and legal basis for the objection and must identify exhibits, if any, and/or

18  witnesses, if any, that the objecting Class Member intends to present at the final

19  fairness and approval hearing.  No Class Member (or anyone claiming to be a Class

20  Member) shall be entitled in any way to contest the approval of the terms and

21  conditions of this Agreement or any order approving the Agreement except by

22  filing and serving written objections in accordance with the Agreement.  Any

23  member of the Plaintiff Class who fails to exclude himself or herself from the

24  Settlement Class in accordance with this Agreement, or who fails to object in the

25  manner prescribed, shall be deemed to have waived, and shall be foreclosed forever

26  from raising objections or asserting any claims arising from, relating to, or based in

27  whole or in part on any of the facts or matters alleged, or which could have been

28  alleged, in the Lawsuit.

12109532. 1

Exhibit 1 -26-

a)  The Parties agree that if any Class Member objects to or disputes their individual settlement calculation under the terms of this Agreement (e.g., if they dispute the number of work weeks identified in the Notice and not the fairness of the settlement) ("Allocation Disputes"), Defendant's records shall presumptively control.  The Parties further agree that if a Class Member disputes the accuracy of the records of Defendant as to the share of funds to be distributed to Class Members, including the number of work weeks (for example), the matter will be referred to Class Counsel and Defendant's counsel, who will in conjunction with the Claims Administrator resolve the issue after meeting and conferring in good faith (subject to the presumption that Defendant's records control the dispute).  All Allocation Disputes shall be mailed to the Claims Administrator with copies to counsel for the Parties no later than the date set by the Court as an objection deadline.  All Allocation Disputes (regarding, for example, work week disputes) will be resolved and decided jointly by Class Counsel and Defendant's counsel, subject to the presumption that Defendant's records control the dispute.  Class Counsel's and Defendant's counsel's decision, subject to the aforementioned presumption, will be final and binding unless the matter is brought before the Court.  If Class Counsel and Defendant's counsel cannot resolve an Allocation Dispute, they may individually or jointly have the matter brought before the Court before final approval of the Agreement.  The Parties shall attempt in good faith to consolidate all claims to be submitted before the Court in one brief and one hearing.

**I.    Qualified Claimants**

1.    "Qualified Claimant" means:  (a) any Current Employee who fails to submit a timely, complete, valid, and accurate Opt Out Notice to the extent he or she has not released his or her claims; and (b) any Former Employee who submits a timely, complete, valid, and accurate Claim Form or a timely, complete, valid, and accurate written statement in lieu of a Claim Form to the extent he or she has not released his or her claims.

12109532. 1

Exhibit 1 -27-

2. Defendant will make reasonable efforts to secure the CA's agreement to do as follows:

a) Certify what Claim Forms, Opt Out Notices, and Allocation Disputes were properly completed and timely submitted and postmarked.

b) Calculate the amount of the payment to each Qualified Claimant in accordance with this Agreement.

c) Make all required withholdings in accordance with this Agreement.

d) Issue the payments (less the required withholdings) under this Agreement.

e) Assume responsibility for all W-2s, IRS Form 1099-MISCs, notices, mailings, secondary mailings, if any, claims administration, and making any and all payments to Class Members in accordance with this Agreement.

**J.     The Effective Date of Settlement**

1. This Agreement shall become effective and be deemed final only after the expiration of ten (10) days after an order finally approving the Agreement is rendered and not subject to appeal or to any attempt to re-open the judgment or to a request to extend the time to seek an appeal; or, if an appeal has been sought, the expiration of ten (10) days after the final disposition of any such appeal and any further proceedings in the Court (and, following any such proceedings, the expiration of all time to notice an appeal or, if an appeal has been sought, the expiration of ten (10) days after the final disposition of any such appeal), which disposition approves the Court's order finally approving the Agreement (the "Effective Date of Settlement"). No money will be distributed to Class Members unless and until after the Effective Date of Settlement as set forth herein.

**K.     Deposits and Payment**

1. Within ten (10) business days of the Effective Date of Settlement, Defendant shall deposit with the CA the GSF.

12109532. 1

Exhibit 1 -28-

2.      Subject to the CA's agreement, which Defendant will make reasonable efforts to secure, within twenty-five (25) calendar days of the Effective Date of Settlement, the CA will (1) mail each Qualified Claimant a check in the amount of his or her calculated reward (subject to the agreed withholdings); (2) mail both Named Plaintiffs a check in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00) each; (3) pay to Class Counsel their attorney's fees and costs; and (4) mail a check to the LWDA in the amount of Five Thousand Dollars and Zero Cents ($5,000.00).  But in no event shall Defendant be required to make the payment under (1) until the deadline for submission of all Claims Forms has passed and any disputes about such Claim Forms has been resolved.

**VI.    NOTICE UNDER CAFA**

1.      The Parties also agree that proper notice of settlement will be made pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(a)-(b). Within no more than ten (10) days after the filing in the Court of the proposed settlement, Defendant will give notice to the appropriate federal and state officials in accordance with CAFA.  CAFA defines the appropriate federal official as the Attorney General of the United States and the appropriate state official as the person in the State who has the primary regulatory or supervisory responsibility with respect to the defendant.  The Defendant agrees to serve the following officials with the requisite notice:

U.S. Department of Justice Attorney General's Office
950 Pennsylvania Avenue, NW
Washington, DC  20530-0001

California's Department Of Labor Standards Enforcement
San Francisco
455 Golden Gate Avenue, 9th Floor
San Francisco, CA 94102

2.      The notice will include the documents and information in accordance with the requirements of CAFA, including the following:

12109532. 1

Exhibit 1
-29-

1          a)  The Complaint, the First Amended Complaint, and the proposed

2 Second Amended Complaint to include a PAGA claim and all materials filed with

3 the Complaint, First Amended Complaint, and the proposed Second Amended

4 Complaint;

5          b)  Notice of any scheduled judicial hearing to be had in this Lawsuit;

6          c)  The proposed notification to be sent to the Class;

7          d)  This Agreement, the accompanying motion for preliminary approval,

8 and the corresponding documents;

9          e)  Written applicable judicial opinions, if any (e.g., regarding class

10 notification, the settlement agreement, judgment, or dismissal).

11          f)  If feasible, Defendant will provide the names of the Class Members

12 and an estimate of the proportionate share of the claims to the entire settlement, or,

13 if not feasible, an estimate of the number of Class Members and proportionate share

14 of the claims of such members to the entire settlement.  The Parties will request that

15 the agencies protect the privacy interests of these Class Members in accordance

16 with the applicable constitutional, statutory, and common laws.

17      3.      Consistent with CAFA, the Court shall not finally approve the

18 Agreement until ninety (90) days after Defendant has served the appropriate federal

19 and state officials as indicated above.

20

21

22

23

24

25

26

27

28

12109532. 1

Exhibit 1 -30-

## VII. DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL

1. Promptly upon execution of this Agreement, the Named Plaintiffs shall apply to the Court via a Motion for Preliminary Approval of Class Action Settlement for a determination of the fairness, adequacy, and reasonableness of the proposed Agreement. Contemporaneous with the filing of the Motion for Preliminary Approval, the Named Plaintiffs will also seek permission from the Court to file a Second Amended Complaint that states a PAGA claim, to which Defendant hereby stipulates only for purposes of this Agreement, and upon Court approval Plaintiffs will cause the Second Amended Complaint to be filed. Plaintiffs shall apply to the Court for the entry of a preliminary order substantially in the following form (subject to Defendant's approval as to form and content):

a) Scheduling a fairness hearing on the question of whether the proposed Agreement, including the amount of Class Counsel's proposed fees and costs and the Enhancements, should be finally approved as fair, reasonable, and adequate;

b) Approving as to form and content the proposed Notice;

c) Approving as to form and content the proposed Class Action Settlement Claim Form;

d) Approving as to form and content the proposed Class Action Settlement Opt Out Form;

e) Directing the mailing of the Notice, the Claim Form, and the Class Action Settlement Opt Out Form by first class mail to the Class Members; and

f) Preliminarily approving the Agreement subject only to the objections of Class Members and final review by the Court.

g) The Parties shall jointly agree to the form and to the content of all such documents, and Class Counsel will not file said documents unless and until the Parties have agreed to their form and content.

12109532. 1

Exhibit 1 -31-

## VIII.  DUTIES OF THE PARTIES FOLLOWING FINAL COURT APPROVAL

1.      Coinciding with the Named Plaintiffs' filing of a motion for final approval of the Settlement, the Named Plaintiffs will submit a proposed final order (subject to Defendant's approval as to form and content):

a)  Approving the Settlement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

b)  Approving the amount of Class Counsel's fees and costs and the Enhancements;

c)  Dismissing the Lawsuit on the merits with prejudice and permanently barring the Named Plaintiffs and all Class Members from prosecuting any of the Claims released in this Agreement against Defendant and the Released Parties; and

d)  Waiving all rights to appeal.

## IX.  PARTIES' AUTHORITY

1.      The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto to the terms and conditions hereof.

## X.  MUTUAL FULL COOPERATION

1.      The Parties agree to fully cooperate with each other to accomplish the terms of this Agreement, including, but not limited to, executing such documents and taking such other action as may reasonably be necessary to implement the terms of this Agreement.  The Parties to this Agreement shall use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein.  As soon as practicable after execution of this Agreement, Class Counsel shall, with the assistance and cooperation of Defendant and its counsel, take all necessary steps to secure the final approval of this Agreement from the Court, subject to the terms of this Agreement.

12109532. 1

Exhibit 1   -32-

2.     The Parties agree that their counsel shall be obligated to cooperate in the drafting of all pleadings necessary to obtain preliminary and final approval of the Agreement, and effectuation of the Agreement.

3.     Counsel for both Parties must be given a reasonable opportunity to review and to approve all documents relating to this Agreement and the proposed settlement.  If the Parties cannot agree as to form or content after reasonably meeting and conferring, the Parties shall submit their dispute to the Court for resolution.

4.     Henceforth, the Parties agree that they will not attempt to discourage Class Members from filing claims or encourage them to object to the Agreement.

## XI.   NO PUBLICITY

1.     The Parties and their respective counsel shall not issue any press release or media release or have any communication with the press or media regarding this Agreement, except as mutually agreed upon or as required by law. This provision shall not apply:  (a) to press or media releases related to securities filings and notices by Defendant; or (b) to statements on Class Counsel's website limited to:  identifying the case name and the case number; stating that Class Counsel was counsel of record in the Lawsuit and stating that the case was settled.

## XII.  NO PRIOR ASSIGNMENTS

1.     The Named Plaintiffs and the Settling Class represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

## XIII. ENFORCEMENT ACTIONS

1.     In the event that one or more of the Parties to this Agreement institutes any legal action, arbitration, or other proceeding against any other party or parties

12109532. 1

Exhibit 1 -33-

to enforce the provisions of this Agreement or to declare rights and/or obligations under this Agreement, the successful party or parties shall be entitled to recover from the unsuccessful party or parties reasonable attorneys' fees and costs, including expert witness fees incurred in connection with any enforcement actions.

## XIV.  NOTICES

1.      Unless otherwise specifically provided herein, all notices, requests, demands, or other communications required or permitted by this Agreement shall be in writing and shall be delivered by hand delivery or through overnight delivery or registered or certified mail, with proof of service as to any method of delivery, to the undersigned persons at their respective addresses as set forth herein:

To Class Members: To the last known address of the class member(s) in question.

To Defendant:

Frank Cronin
SNELL & WILMER L.L.P.
600 Anton Boulevard, Suite 1400
Costa Mesa, CA 92626-7689

To the Named Plaintiffs:

Melissa M. Harnett
WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 Reseda Boulevard, Suite 330
Post Office Box 7033
Tarzana, CA 91357-7033

Michael Malk
MICHAEL MALK, ESQ., APC
1180 South Beverly Drive, Suite 610
Los Angeles, CA  90035

Notice shall be deemed made upon delivery in compliance with this provision.

## XV.   CONSTRUCTION

12109532. 1

Exhibit 1 -34-

1.  The Parties hereto agree that the terms and conditions of this Agreement are the result of lengthy, intensive arm's length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her, or its counsel participated in the drafting of this Agreement.  All terms of this Agreement shall be governed by and interpreted according to the laws of the State of California, without giving effect to conflicts of laws principles.  The Parties further agree that they have been represented by competent counsel, and they have had an opportunity to consult with counsel.  The Parties to this Agreement agree that it reflects their good faith compromise of the claims raised in this Lawsuit, based upon their assessment of the mutual risks and costs of further litigation and the assessments of their respective counsel.

**XVI.  NON-WAIVER**

1.  The failure of Defendant to exercise any rights hereunder shall not constitute its waiver of the right to the later exercise thereof.  No delay on the part of Defendant in exercising any power or right hereunder will operate as a waiver thereof, nor will any single or partial exercise of any power or right hereunder preclude other or further exercises thereof or the exercise of any other power or right.  This provision is not intended to revive any deadlines that already had expired.

**XVII. CAPTIONS AND INTERPRETATIONS**

1.  Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any provision hereof.  Each term of this Agreement is contractual and not merely a recital.

**XVIII.   MODIFICATION**

1.  This Agreement may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court.  This

12109532. 1

Exhibit 1 -35-

1   Agreement may not be discharged except by performance in accordance with its

2   terms or by a writing signed by the Parties hereto.

3   **XIX.  INTEGRATION CLAUSE**

4         1.     This Agreement contains the entire agreement between the Parties

5   relating to the settlement contemplated hereby, and all prior or contemporaneous

6   agreements, understandings, representations, and statements, whether oral or

7   written and whether by a party or such party's legal counsel, are merged herein.  No

8   rights hereunder may be waived except in writing.  In entering into this Agreement,

9   the Parties recognize California Civil Code Section 1625 and California Code of

10  Civil Procedure Section 1856(a), which provide that a written agreement is to be

11  construed according to its terms and may not be varied or contradicted by extrinsic

12  evidence.

13  **XX.  BINDING ON ASSIGNS; NO THIRD PARTY BENEFICIARIES**

14        1.     Without limiting the benefit to the Released Parties, this Agreement

15  shall be binding upon and inure to the benefit of the Parties hereto.  Without

16  limiting the benefit to the Released Parties, the representations, warranties,

17  covenants, and agreements contained in this Agreement are for the sole benefit of

18  the Parties and shall not be construed to confer any right or to afford any remedy to

19  any other person.

20  **XXI.  CLASS MEMBER SIGNATORIES**

21        1.     It is agreed that because the Class Members are so numerous, it is

22  impossible or impractical to have each Class Member execute this Agreement.  The

23  Notice will advise all Class Members of the binding nature of the release and such

24  shall have the same force and effect as if this Agreement were executed by each

25  Class Member.

26  **XXII.  ENFORCEABILITY**

27        1.     This Agreement is intended to be enforceable pursuant to California

28  Evidence Code Section 1123.

12109532. 1

Exhibit 1  -36-

## XXIII. COUNTERPARTS

1. This Agreement may be executed in counterparts, and when each Party has signed and delivered all required signatures to the other Party, each counterpart shall be deemed an original. When taken together with other signed counterparts, the counterparts shall constitute one Agreement, which shall be binding upon and effective as to all Parties.

## XXIV. CONTINUING JURISDICTION OF THE COURT

1. The Parties agree that upon final approval by the Court, this Agreement shall be enforceable by the Court, and the Court shall retain exclusive and continuing jurisdiction.

IN WITNESS WHEREOF: the undersigned have duly executed this Agreement as of the date indicated below:

Dated: October 28, 2010

_Perfecto Espinoza_
PERFECTO ESPINOZA, Plaintiff on behalf of himself and all others similarly situated

Dated: October __, 2010

_____
CESAR PEDROZA, Plaintiff on behalf of himself and all others similarly situated

Dated: October __, 2010          Respectfully submitted,

_____
DEFENDANT DOMINO'S PIZZA LLC

12109532. 1

Exhibit 1
-37-

## XXIII.    COUNTERPARTS

1.    This Agreement may be executed in counterparts, and when each Party has signed and delivered all required signatures to the other Party, each counterpart shall be deemed an original.  When taken together with other signed counterparts, the counterparts shall constitute one Agreement, which shall be binding upon and effective as to all Parties.

## XXIV.    CONTINUING JURISDICTION OF THE COURT

1.    The Parties agree that upon final approval by the Court, this Agreement shall be enforceable by the Court, and the Court shall retain exclusive and continuing jurisdiction.

IN WITNESS WHEREOF: the undersigned have duly executed this Agreement as of the date indicated below:

Dated: October ___, 2010

_____
PERFECTO ESPINOZA, Plaintiff on behalf of himself and all others similarly situated

Dated: October ___, 2010

_____
CESAR PEDROZA, Plaintiff on behalf of himself and all others similarly situated

Dated: October ___, 2010

Respectfully submitted,

_____
DEFENDANT DOMINO'S PIZZA LLC

12109532. 1

Exhibit 1
- 37 -

## XXIII.    COUNTERPARTS

1.    This Agreement may be executed in counterparts, and when each Party has signed and delivered all required signatures to the other Party, each counterpart shall be deemed an original.  When taken together with other signed counterparts, the counterparts shall constitute one Agreement, which shall be binding upon and effective as to all Parties.

## XXIV.    CONTINUING JURISDICTION OF THE COURT

1.    The Parties agree that upon final approval by the Court, this Agreement shall be enforceable by the Court, and the Court shall retain exclusive and continuing jurisdiction.

IN WITNESS WHEREOF: the undersigned have duly executed this Agreement as of the date indicated below:

Dated:  November __, 2010

_____
PERFECTO ESPINOZA, Plaintiff on behalf of himself and all others similarly situated

Dated:  November __, 2010

_____
CESAR PEDROZA, Plaintiff on behalf of himself and all others similarly situated
Respectfully submitted,

Dated:  November 16, 2010

_____
DEFENDANT DOMINO'S PIZZA LLC

DONALD FONTANA
VICE PRESIDENT - WEST REGION
DOMINO'S PIZZA SUPPLY CHAIN SERVICES

12109532. 1

Exhibit 1 - 37 -

DATED: November ___, 2010

WASSERMAN, COMDEN,
CASSELMAN & ESENSTEN, L.L.P.
MELISSA M. HARNETT
JESSE B. LEVIN


By: _____
MELISSA HARNETT
Attorneys for Plaintiffs, PERFECTO
ESPINOZA and CESAR PEDROZA, and all
others similarly situated.


DATED: November ___, 2010

MALK LAW FIRM
MICHAEL MALK


By: _____
MICHAEL MALK
Attorney for Plaintiffs, PERFECTO
ESPINOZA and CESAR PEDROZA, and all
others similarly situated.

DATED: November 15, 2010

SNELL & WILMER
FRANK CRONIN
BRIAN MILLS


By: _____
FRANK CRONIN
Attorneys for Domino's Pizza LLC

12109532. 1

- 38 -

Exhibit 1

DATED: December 28, 2010  WASSERMAN, COMDEN,
            CASSELMAN & ESENSTEN, L.L.P.
            MELISSA M. HARNETT
            JESSE B. LEVIN


By: _____
JESSE B. LEVIN
Attorneys for Plaintiffs, PERFECTO
ESPINOZA and CESAR PEDROZA, and all
others similarly situated.

DATED: December 28, 2010  MALK LAW FIRM
            MICHAEL MALK


By: _____
MICHAEL MALK
Attorney for Plaintiffs, PERFECTO
ESPINOZA and CESAR PEDROZA, and all
others similarly situated.

DATED: December ___, 2010  SNELL & WILMER
           FRANK CRONIN
           BRIAN MILLS


By: _____
FRANK CRONIN
Attorneys for Domino's Pizza LLC

12109532. 1

Exhibit 1 -38-